# UNITED STATES DEPARTMENT OF JUSTICE ET AL. *v.* JULIAN ET AL.

No. 86–1357.   Argued January 19, 1988—Decided May 16, 1988

2

REHNQUIST, C. J., delivered the opinion of the Court, in which BREN-NAN, MARSHALL, BLACKMUN, and STEVENS, JJ., joined. SCALIA, J., filed a dissenting opinion, in which WHITE and O'CONNOR, JJ., joined, *post*, p. 15. KENNEDY, J., took no part in the consideration or decision of the case.

*Edwin S. Kneedler* argued the cause for petitioners. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Cohen, Leonard Schaitman*, and *Sandra Wien Simon.*

*Eric R. Glitzenstein* argued the cause for respondents. With him on the briefs were *Katherine A. Meyer* and *Alan B. Morrison.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Respondents in this case are prison inmates who sued under the Freedom of Information Act (FOIA), 5 U. S. C. § 552, for disclosure of their presentence investigation reports. These reports are prepared by a probation officer for use by the district court at sentencing; they contain background information about a defendant and the circumstances of his offense. After sentencing, the reports are typically transmitted to the Bureau of Prisons and then to the Parole Commission for eventual use in determining whether a prisoner should be released on parole. The courts below ordered petitioners—the Department of Justice and the Parole Commission—to disclose the reports. The question we are now called on to decide is whether the FOIA requires that these presentence investigation reports be disclosed by petitioners or whether the reports fall under one of the FOIA's statutory exemptions.

Rule 32(c) of the Federal Rules of Criminal Procedure outlines the requirements for preparation and disclosure of a presentence report for a criminal defendant who has been adjudged guilty. Rule 32(c)(1) provides that before imposition of sentence the probation service of the district court shall make an investigation into the defendant's background and

the circumstances of the offense.[1]   The results of the investi-
gation are compiled into a report, which under Rule 32(c)(2)
must contain the defendant's prior criminal record, a descrip-
tion of the circumstances of the offense and the defendant's
behavior, a discussion of the loss or harm suffered by any vic-
tims of the offense, and any other information that might aid
the court in sentencing, including the restitution needs of the
victim.

The Rule also specifies the procedure by which the court is
to disclose the report and its contents to a defendant.   Rule
32(c)(3)(A) states that "[a]t a reasonable time before impos-
ing sentence the court shall permit the defendant and his
counsel to read the report . . . exclusive of any recommen-
dation as to sentence."   The court may not disclose, how-
ever, portions of the report that contain "diagnostic opinions
which, if disclosed, might seriously disrupt a program of re-
habilitation; or sources of information obtained upon a prom-
ise of confidentiality; or any other information which, if dis-
closed, might result in harm, physical or otherwise, to the
defendant or other persons."   *Ibid.*   If the report does con-
tain this type of information, the court is required to give
orally or in writing a summary of the factual information that
has been withheld and that is to be relied on in determin-
ing an appropriate sentence.   Once the report has been dis-
closed, the defendant and his counsel are to be given an
opportunity to comment on the report and to introduce evi-
dence showing that the report contains factual inaccuracies.
Rule 32(c)(3)(E) also provides that "[a]ny copies of the pre-
sentence investigation report made available to the defend-
ant and his counsel and the attorney for the government shall

---

[1] No presentence investigation is required if, with the permission of the
court, the defendant waives the report, or if the court finds that there is
already sufficient information in the record to enable a meaningful exercise
of the court's sentencing discretion.   If the court finds that no report is
necessary, it must explain this finding on the record.   Fed. Rule Crim.
Proc. 32(c)(1).

be returned to the probation officer immediately following the imposition of sentence or the granting of probation, unless the court, in its discretion otherwise directs."

After the defendant is sentenced, a copy of the presentence report is typically transmitted to the Bureau of Prisons, where it may be used in determining a defendant's classification as an inmate, see 28 CFR §§ 524.10, 524.12(e) (1987), choosing an appropriate treatment program, or deciding eligibility for various privileges. See Brief for Petitioners 7 (citing Fennell & Hall, Due Process at Sentencing, 93 Harv. L. Rev. 1615, 1679 (1980)).[2] A copy of the presentence report is also transmitted to the United States Parole Commission pursuant to § 2(e) of the Parole Commission and Reorganization Act of 1976 (Parole Act),[3] 18 U. S. C. § 4205(e),

---

[2] This use of the presentence report by the Bureau of Prisons is not required by statute, although it has apparently been the practice for some time. See Fennell & Hall, 93 Harv. L. Rev., at 1679. Indeed, the Advisory Committee Notes to the 1983 Amendments to Rule 32(c) expressly note the practice of transmitting the report to the Bureau of Prisons. See 18 U. S. C. App., p. 995 (1982 ed., Supp. IV), 97 F. R. D. 245, 306, 308 (1983).

[3] The Comprehensive Crime Control Act of 1984, Pub. L. 98–473, Tit. II, ch. 2, 98 Stat. 1987, has significantly revised the federal system of sentencing that was in place at the time the Parole Act was adopted in 1976. Most importantly, the Crime Control Act mandates that all sentences of imprisonment shall be for fixed terms, see 18 U. S. C. §§ 3581, 3582(a) (1982 ed., Supp. IV), and eliminates the possibility of release on parole prior to the end of a sentence, §§ 3621(a), 3624(a). Accordingly, the Crime Control Act also provided that the Parole Act was to be repealed on November 1, 1987, when the new sentencing provisions went into effect. The Parole Commission will continue to operate for five years, however, in order to make parole decisions for individuals sentenced before November 1, 1987. During this 5-year period, the Parole Act will remain in effect as to those individuals. Pub. L. 98–473, § 235(b)(1)(A), 98 Stat. 2032. Thus, although the Parole Commission is to be phased out, it will still be handling presentence reports for individual defendants for some time. The Government also points out that even after the Parole Commission is dissolved, the Bureau of Prisons will continue to receive copies of presentence reports from the district courts.

which makes it the "duty of the . . . probation officers" to furnish "information available to such officer . . . concerning any eligible prisoner or parolee" to the Commission upon request. The Parole Commission is then required by statute to consider the report, among other documents, in making a parole decision.  § 4207(3).

The Parole Act also requires that, at least 30 days before a scheduled parole hearing, the prisoner be provided with "reasonable access to [the] report or other document to be used by the Commission in making" its parole determination. § 4208(b).  As in Rule 32(c)(3)(A), however, the Act exempts from this disclosure requirement the same three categories of information—diagnostic opinions, confidential information, and potentially harmful information—that were protected from disclosure by the district court.  The Act also requires that if any such information is excluded from disclosure, it is the duty of the Commission (or any other agency) "to summarize the basic contents of the material withheld . . . and furnish such summary to the inmate."  § 4208(c)(3); see also 28 CFR § 2.55(c) (1987).[4]  The Parole Act does not contain, however, any express requirement that the inmate return all or any copies of the documents to which he is given "reasonable access."

The present case stems from two separate requests by individual inmates for copies of their presentence reports.  In 1984, respondent Kenneth Michael Julian, an inmate in federal prison in Arizona, asked the Parole Commission to furnish him with a copy of his presentence report.  When his request was denied, Julian brought this FOIA suit against the Department of Justice in the United States District

---

[4] According to the Government, the usual practice is for the probation officer to identify any information that was excluded by the district court and to provide the Commission with copies of the summaries that were used by the court.  Brief for Petitioners 9 (citing Probation Division, Administrative Office of the United States Courts, The Presentence Investigation Report 2 (1984)).

Court for the District of Arizona. In a brief order, the District Court granted Julian's motion for summary judgment and ordered the Government to comply with his request. In 1984, respondent Margaret J. Wallace, then an inmate in federal prison in California, filed a FOIA request with the Parole Commission for all of the Commission's records pertaining to her. The Commission honored her request in large part, but refused to turn over a copy of her presentence report. Wallace then filed suit against the Parole Commission[5] in the United States District Court for the Northern District of California. This court, too, ordered that the presentence report be released.

The two cases were consolidated on appeal before the United States Court of Appeals for the Ninth Circuit, which affirmed the judgment in each. 806 F. 2d 1411 (1986). After first stating that the presentence reports are "agency records" for purposes of the FOIA,[6] the court rejected the Government's contentions that presentence reports are exempt from disclosure under both 5 U. S. C. § 552(b)(3) (Exemption 3) and § 552(b)(5) (Exemption 5). While certain parts of the presentence reports may be withheld pursuant to Rule 32(c)(3) and the Parole Act, 18 U. S. C. § 4208(c), the court found that "neither Exemption 3 nor Exemption 5 provides a blanket exemption for presentence investigation reports" when the FOIA request is made by the subject of the presentence report. 806 F. 2d, at 1416. The court also rejected the Government's argument that the FOIA's disclosure requirements were superseded by the special statutory procedures for obtaining presentence reports set out in Rule

---

[5] She also named as a defendant in her action Charles Turnbo, the warden of the prison in which she was incarcerated. The apparent reason for this is that Wallace brought her action as a petition for habeas corpus pursuant to 28 U. S. C. § 2241. The District Court, however, treated her claim as a suit against an agency under the FOIA. See 5 U. S. C. § 552(a)(4)(B).

[6] The Government does not dispute this conclusion on this appeal.

32(c) and the Parole Act. Because this decision of the Court of Appeals conflicts with an earlier decision of the United States Court of Appeals for the District of Columbia Circuit, see *Durns* v. *Bureau of Prisons*, 256 U. S. App. D. C. 156, 804 F. 2d 701, rehearing en banc denied, 257 U. S. App. D. C. 30, 806 F. 2d 1122 (1986), cert. pending, No. 86–6550, and because it raises several important statutory issues, we granted certiorari, 482 U. S. 926 (1987), and we now affirm.

The system of disclosure established by the FOIA is simple in theory. A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in § 552(b). See *United States* v. *Weber Aircraft Corp.*, 465 U. S. 792, 793–794 (1984). Congress created these exemptions because it "realized that legitimate governmental and private interests could be harmed by release of certain types of information." *FBI* v. *Abramson*, 456 U. S. 615, 621 (1982); see also *CIA* v. *Sims*, 471 U. S. 159, 167 (1985). Nonetheless, "[t]he mandate of the FOIA calls for broad disclosure of Government records," *id.*, at 166, and for this reason we have consistently stated that FOIA exemptions are to be narrowly construed, see *Abramson, supra*, at 630; *Department of Air Force* v. *Rose*, 425 U. S. 352, 361 (1976). With this principle in mind, we turn to consider whether, as the Government contends, presentence investigation reports are exempted from disclosure under either FOIA Exemption 3 or Exemption 5.

Exemption 3 of the FOIA permits agencies to withhold matters that are

> "specifically exempted from disclosure by statute . . . , provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." § 552(b)(3).

The Government argues that this Exemption applies to presentence reports because Rule 32(c) and the Parole Act are

statutes that specifically exempt the reports from disclosure and that "refer to particular types of matters to be withheld." To some extent this is clearly true: both the Rule and the Parole Act specifically exempt from disclosure any information in the report that relates to confidential sources, diagnostic opinions, and other information that may cause harm to the defendant or to third parties. See Rule 32(c)(3)(A); 18 U. S. C. § 4208(c). This information is thus exempt from disclosure under the FOIA.

Beyond this, however, neither the Rule nor the Act satisfies the requirements of Exemption 3. Both provisions have been recently changed, not to protect the presentence report from disclosure, but to ensure that it would be disclosed to the defendant who is about to be sentenced or who is up for parole. For example, in 1966, Rule 32(c) was amended to give sentencing courts the discretion to disclose the reports to defense attorneys and prosecutors. The Advisory Committee Notes indicate that the purpose of this amendment was:

> "[T]o make it clear that courts may disclose all or part of the presentence report to the defendant or to his counsel. It is hoped that courts will make increasing use of their discretion to disclose so that defendants generally may be given full opportunity to rebut or explain facts in presentence reports which will be material factors in determining sentences." 18 U. S. C. App., p. 625, 39 F. R. D. 69, 194 (1966).

Congress amended the Rule again in 1974,[7] this time changing it to state that "[b]efore imposing sentence the court shall *upon request* permit the defendant, or his counsel . . . , to read the report of the presentence investigation," Pub. L. 94–64, 89 Stat. 376 (emphasis added). In 1983, after an empirical study revealed that "the extent and nature of disclosure of the presentence investigation report in federal courts

---

[7] The amendments became effective on December 1, 1975.

under current rule 32 is insufficient to ensure accuracy of sentencing information," Advisory Committee Notes, 18 U. S. C. App., p. 996 (1982 ed., Supp. IV), 97 F. R. D. 245, 307 (1983), Congress made additional changes in the Rule. It made disclosure of the report mandatory by eliminating the request requirement; it authorized disclosure to both the defendant and defense counsel; and it required that disclosure be made at a reasonable time before sentencing.

All of this makes clear that the Rule serves two purposes: it prevents disclosure of the three categories of information described above, but it facilitates disclosure of the balance of the report to the defendant. Similarly, the provision of the Parole Act dealing with presentence reports is also designed to ensure that much of the information on which a parole decision is to be based, including the presentence report, be disclosed to the potential parolee. In line with this intent, Congress expressly required that all prisoners be furnished with "reasonable access" to the pertinent documents at least 30 days before a parole hearing. § 4208(b).

The Government argues that while Congress did intend that defendants be given some access to their presentence reports, it also sought to limit that access by requiring that all copies of reports that are furnished pursuant to Rule 32(c) be returned to the court, unless the court directs otherwise. Fed. Rule Crim. Proc. 32(c)(3)(E). As stated in the Advisory Committee Notes, the purpose of this provision was "to insure that [the reports] do not become available to unauthorized persons." 18 U. S. C. App., p. 627, 62 F. R. D. 271, 325 (1974). Admittedly this provision does qualify somewhat the defendant's access to his or her presentence report when that report is furnished by the district court in the context of sentencing, but in our opinion it does not convert the Rule, a part of which is essentially designed to mandate disclosure, into a statute that "specifically exempt[s] from disclosure" for purposes of Exemption 3 of the FOIA. And, the Parole Act, which governs the Parole Commission's duties in

regard to disclosure of presentence reports, does not itself contain a similar provision. The Act only requires that "reasonable access" to the report be given; there is no express limitation on an inmate's power to retain a copy of the report. Even if we assume, as the Government suggests, that the Parole Act implicitly adopts the restriction contained in Rule 32(c)(3)(E), this would still not convert § 4208 into an Exemption 3 statute. Exemption 3 permits an agency to withhold only those parts of a presentence report that are expressly protected by Rule 32(c)(3)(A) or 18 U. S. C. § 4208(c); the remaining parts of the reports are not covered by this exemption, and thus must be disclosed[8] unless there is some other exemption which applies to them.

The Government also relies on Exemption 5 of the FOIA to support withholding of the requested documents. This Exemption makes the FOIA inapplicable to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U. S. C. § 552(b)(5).[9] In the past, we have interpreted this somewhat Delphic provision as "incorporat[ing] the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context." *Renegotiation Board* v. *Grumman Aircraft Engineering Corp.*, 421 U. S. 168, 184 (1975); see also *FTC* v. *Grolier Inc.*, 462 U. S. 19, 26–27 (1983); *Weber Aircraft Corp.*, 465 U. S., at 799. As we stated in *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 149 (1975), Exemption 5 "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context." See also

---

[8] Under § 552(b)(9), an agency must supply to a FOIA applicant "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt."

[9] Respondents argue that presentence memorandums are not "inter-agency" records for purposes of Exemption 5. The Court of Appeals did not address this issue, however, and we do not find it necessary to do so in light of our disposition today.

H. R. Rep. No. 1497, 89th Cong., 2d Sess., 10 (1966) (the purpose of Exemption 5 is to ensure that "any internal memorandums which would routinely be disclosed to a private party through the discovery process in litigation with the agency would be available to the general public"). Accordingly, "[t]he test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *Grolier, supra,* at 26.

Both parties agree that in both civil and criminal cases the courts have been very reluctant to give *third parties* access to the presentence investigation report prepared for some other individual or individuals. See, *e. g., United States* v. *McKnight,* 771 F. 2d 388, 390 (CA8 1985); *United States* v. *Anderson,* 724 F. 2d 596, 598 (CA7 1984); *United States* v. *Charmer Industries, Inc.,* 711 F. 2d 1164, 1173–1176 (CA2 1983); *Hancock Brothers, Inc.* v. *Jones,* 293 F. Supp. 1229 (ND Cal. 1968). As the Government points out, one reason for this is the fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report. See, *e. g., United States* v. *Martinello,* 556 F. 2d 1215, 1216 (CA5 1977). A second reason is the need to protect the confidentiality of the information contained in the report. Accordingly, the courts have typically required some showing of special need before they will allow a third party to obtain a copy of a presentence report. See, *e. g., Charmer, supra,* at 1174–1176 (following *Hancock Brothers, Inc.* v. *Jones, supra,* in concluding that a report may not be disclosed "in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice").

There is no indication, however, that similar restrictions on discovery of presentence investigation reports have been recognized by the courts when the individual requesting discovery is the subject of the report. Indeed, there seem to be no reported judicial decisions on the subject. By itself, of course, the fact that there are no cases directly on point with

respect to this particular category of requests for information is not conclusive evidence that no discovery privilege should be recognized in this situation. From our perspective, however, it appears that the reasoning of the cases denying disclosure to third-party requesters would have little applicability to a request by a defendant to examine his own report, particularly in light of Rule 32(c)'s specific mandate that the report be disclosed to the defendant during sentencing. We note in addition that most privileges of the sort described in Exemption 5 arise as a result of judicial decision. See, *e. g.*, *United States* v. *Reynolds*, 345 U. S. 1, 7–8 (1953). But unless the privilege is constitutionally rooted, Congress may determine for itself which privileges the Government may avail itself of and which it may not. Here, the thrust of the disclosure portions of Rule 32(c) and the Parole Act speaks so strongly against the existence of a privilege on the part of the Government when the request is from the subject of the report that we think it accurate to say that Congress has strongly intimated, if it has not actually provided, that no such privilege should exist.

The Government contends nonetheless that because Exemption 5 applies to documents that "would not be available by law to *a* party . . . in litigation with the agency" (emphasis added), we cannot construe Exemption 5 in such a way as to make an agency's duty to disclose a presentence report turn on the nature or identity of the requester. The Government points to our reasoning in *Grolier*, where we held that documents that were privileged under the work-product doctrine were not "routinely" available for Exemption 5 purposes even though it was possible for some parties seeking discovery to obtain access to the document by showing "substantial need." 462 U. S., at 27. As we stated, "[w]hether its immunity from discovery is absolute or qualified, a protected document cannot be said to be subject to 'routine' disclosure." *Ibid.* Such a result, "by establishing a discrete category of exempt information, implements the congressional intent to

provide 'workable' rules." *Ibid.;* see also *EPA* v. *Mink*, 410 U. S. 73, 79 (1973) (the exemptions are "plainly intended to set up concrete, workable standards for determining whether particular material may be withheld or must be disclosed").

Contrary to the Government's contention, however, nothing in *Grolier*, or in the language of Exemption 5, requires that, even though Congress has spoken in the manner that it has, a privilege against disclosure must nonetheless be extended to all requests for these reports, or to none at all. *Grolier* held that the fact that a claim of privilege might be overridden in a particular case by special circumstances did not mean that discovery was "routinely available" within the meaning of Exemption 5. We reaffirm that holding, but we decline the Government's invitation to extend it to circumstances in which there is no basis for a claim of privilege from disclosure against one class of requesters, although there is a perfectly sound basis for resisting disclosure at the behest of another class of requesters. The fact that no one need show a particular need for information in order to qualify for disclosure under the FOIA does not mean that in no situation whatever will there be valid reasons for treating a claim of privilege under Exemption 5 differently as to one class of those who make requests than as to another class. In this case, it seems clear that there is good reason to differentiate between a governmental claim of privilege for presentence reports when a third party is making the request and such a claim when the request is made by the subject of the report. As we noted above, there simply is *no* privilege preventing disclosure in the latter situation. Even under our ruling in *Grolier*, therefore, discovery of the reports by the defendants themselves can be said to be "routine."

*Affirmed.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE SCALIA, with whom JUSTICE WHITE and JUSTICE O'CONNOR join, dissenting.

I dissent from today's decision because in my view it fails to perform the fundamental judicial function of reading the body of enacted laws in such fashion as to cause none of them to be pointless; and because in order to achieve that failure it makes a departure, sure to engender confusion and litigation, from the general principle of the Freedom of Information Act that individuating characteristics of requesters are not to be considered. I address each of these points in turn.

I

In 1975, Congress approved Rule 32(c)(3)(E) of the Federal Rules of Criminal Procedure, providing that a defendant cannot retain copies of the presentence report unless the sentencing judge (presumably familiar with the dangerousness of the defendant and his associates) specifically directs. Act of July 31, 1975, Pub. L. 94–64, § 2, 89 Stat. 370. In the 1976 Parole Act, Congress adopted a clause completely consistent with this provision, requiring the Parole Commission, at least 30 days before a scheduled parole hearing, to provide the inmate only "reasonable access" to the report—a term that assuredly does not require, and indeed is ordinarily used specifically to make clear that there is not required, retention of the document. Today the Court holds that all this really does not matter, because the defendant can obtain a copy of the report under the Freedom of Information Act (FOIA), 5 U. S. C. § 552, as soon as it is transferred to the Bureau of Prisons and the Parole Commission after his sentencing.

If the FOIA had been adopted *after* the protective provisions in question, one could at least argue that there had been a change of heart by Congress, and if not repeal by implication at least frustration by implication. But the fact is that the relevant provision of the FOIA was enacted in its current form in 1967, *before* the Federal Rule of Criminal Procedure and Parole Act provisions at issue here, Pub. L. 90–23, 81

Stat. 54. Nonetheless, today's decision converts the Rule 32 requirement that retention be explicitly approved by the sentencing judge into no more than a temporary inconvenience, since the defendant can obtain the document without such approval shortly after his sentencing; and it reduces the Parole Act time and manner limitations (which provide that the duty arises only when a parole hearing has been scheduled, and that the content of the duty is to provide only "reasonable access") to utter meaninglessness.

I am frank to admit that I cannot readily conceive why allowing a defendant or an inmate to keep a copy of the report is significantly more threatening than allowing him to read and make notes about it. Penal and probationary authorities believed otherwise, however—and apparently continue to believe so, as is evident from the 1985 statement of the Chief of the Division of Probation of the Administrative Office of the United States Courts, opposing a proposal that the Parole Commission provide by rule for routine release of copies of presentence reports:

> "[I]t is the position of the Probation Committee of the Judicial Conference of the United States, as well as the Probation Division of the Administrative Office of the U. S. Courts, that permitting a defendant to keep a copy of his presentence report could likely impede the ability of U. S. probation officers to gather information and protect their sources.
>
> .    .    .    .    .
>
> "Were a defendant permitted to retain a copy of his report . . . there would be no way to effectively prohibit further disclosure of the information to third parties. This possibility is far more dangerous to a source of information than is the possibility of the defendant revealing his recollection of what he read in the report prior to sentencing.
>
> .    .    .    .    .

> "[Rule 32(c)(3)(E)] embodies the concern of the courts that the defendant's retention of the presentence report is normally inimical to the interests of obtaining full and accurate information prior to sentencing." Letter from Probation Chief Chamlee to Chairman of Parole Comm'n Baer, June 17, 1985, App. to Pet. for Cert. 25a–26a.

I have no idea whether this is sound, and neither does the Court. But the issue was obviously addressed by Congress, and resolved in favor of restricted access. We should not frustrate that disposition unless the FOIA unavoidably so requires. As I now proceed to discuss, just the opposite is true: A genuine revolution in accepted FOIA principles is required to produce today's peculiar result.

## II

It is too well established to warrant extensive discussion—or at least until today has been—that the FOIA is not meant to provide documents to particular individuals who have special entitlement to them, but rather "to inform the *public* about agency action." *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 143, n. 10 (1975) (emphasis added). In his foreword to an official Justice Department Memorandum for agency guidance describing the then newly enacted FOIA, Attorney General Clark correctly identified as one of the five key concerns of the Act the goal "that *all* individuals have *equal rights of access.*" Attorney General's Memorandum on Public Information Section of Administrative Procedure Act, United States Department of Justice iv (June 1967) (emphasis added) (hereinafter AG Memorandum). The scholarly commentators agreed:

> "The Act's sole concern is with what must be made public or not made public. The Act never provides for disclosure to some private parties and withholding from others. The main provision of section 3 says that information is to be made available 'to the public' and the central provision of subsection (c) requires availability of

'records to 'any person.' " Davis, The Information Act: A Preliminary Analysis, 34 U. Chi. L. Rev. 761, 765 (1967).

What has been true of the FOIA in general has also been true of Exemption 5 in particular, which exempts from mandatory production "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U. S. C. § 552(b)(5).[1] As Attorney General Clark's Memo-

---

[1] Respondents contend that presentence reports are not "inter-agency or intra-agency memorandums" within the meaning of Exemption 5, since they are prepared by probation officers, who are appointed by and serve under the direction of the courts, see 18 U. S. C. §§ 3602(a) and 3603(8) (1982 ed., Supp. IV), and since courts are not "agencies" for purposes of the FOIA, see 5 U. S. C. §§ 551(1)(B) and 552(f) (1982 ed. and Supp. IV). Although the Court does not reach this issue, see *ante,* at 11, n. 9, I must. Apart from its present context, the most natural meaning of the phrase "intra-agency memorandum" is a memorandum that is addressed both to and from employees of a single agency—as opposed to an "inter-agency memorandum," which would be a memorandum between employees of two different agencies. The problem with this interpretation is that it excludes many situations where Exemption 5's purpose of protecting the Government's deliberative process is plainly applicable. Consequently, the Courts of Appeals have uniformly rejected it, holding the "intra-agency memorandum" exemption applicable to such matters as information furnished by Senators to the Attorney General concerning judicial nominations, see *Ryan* v. *Department of Justice,* 199 U. S. App. D. C. 199, 207–209, 617 F. 2d 781, 789–791 (1980), and reports prepared by outside consultants, see *Government Land Bank* v. *GSA,* 671 F. 2d 663, 665 (CA1 1982). It seems to me that these decisions are supported by a permissible and desirable reading of the statute. It is textually possible and much more in accord with the purpose of the provision, to regard as an intra-agency memorandum one that has been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency—*e. g.,* in a capacity as employee or consultant to the agency, or as employee or officer of another governmental unit (not an agency) that is authorized or required to provide advice to the agency. Here we have a memorandum that fits readily within this definition. See Fed. Rule Crim. Proc. 32(c)(3)(D) (referring to "any copy of the presentence investigation report

randum went on to explain, "[t]he effect of exemption (5) is to make available *to the general public* those internal documents from agency files which are routinely available to litigants, unless some other document bars disclosure." AG Memorandum 38 (emphasis added). It has long been established that in applying Exemption 5 the individuating characteristics of the particular requester are not to be considered. As the District of Columbia Circuit put it in the leading case, which we have cited with approval, see *NLRB* v. *Sears, Roebuck & Co., supra,* at 149, n. 16: "The question for decision is . . . whether '"a private party"—not necessarily the applicant—would routinely be entitled to [the agency record] through discovery.'" *Sterling Drug Inc.* v. *FTC,* 146 U. S. App. D. C. 237, 244, 450 F. 2d 698, 705 (1971), quoting from Davis, *supra,* at 796.

We approved this principle in *EPA* v. *Mink,* 410 U. S. 73 (1973), a FOIA suit brought by 33 Members of the House of Representatives, saying in regard to Exemption 5 that "the Act [does not], by its terms, permit inquiry into particularized needs of the individual seeking the information, although such an inquiry would ordinarily be made of a private litigant." *Id.,* at 86. It is significant that although one of the most controversial features of the 1974 amendments to the FOIA was the revision of § 552(b)(1) to overturn the holding of *Mink* regarding Exemption 1, see President's Message to the House of Representatives Returning H. R. 12471 Without His Approval, 10 Weekly Comp. of Pres. Doc. 1318 (1974), Exemption 5 was left unchanged. We strongly reaffirmed our *Mink* approach in *NLRB* v. *Sears, Roebuck & Co.:*

> "Sears' rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest

---

. . . made available to the Bureau of Prisons or the Parole Commission"); 18 U. S. C. § 4205(e) (making it "the duty of the various probation officers" to provide the reports of prisoners eligible for parole to the Parole Commission upon request).

in the Advice and Appeals Memoranda greater than that shared by the average member of the public. The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants." 421 U. S., at 143, n. 10.

"[I]t is not sensible to construe the Act to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling. Indeed, the House Report says that Exemption 5 was intended to permit disclosure of those intra-agency memoranda which would 'routinely be disclosed' in private litigation, H. R. Rep. No. 1497, p. 10, and we accept this as the law. [Citing *Sterling Drug, supra.*]" *Id.*, at 149, n. 16.

Again in 1983, we confirmed the basic principle underlying all this, that if an Exemption 5 privilege cannot be asserted against one particular requester, it cannot be asserted against the world:

"The logical result of respondent's position is that whenever work-product documents would be discoverable in any particular litigation, they must be disclosed to anyone under the FOIA. We have previously rejected that line of analysis." *FTC* v. *Grolier Inc.,* 462 U. S. 19, 28.

Most recently, in 1984, we again disregarded the identity and circumstances of the FOIA requester for purposes of making the Exemption 5 determination, expressing the basis for our decision quite simply: "[S]ince the *Machin* privilege [protecting confidential statements made to government air crash safety investigators] is well recognized in the case law as precluding routine disclosure of the statements, the statements are covered by Exemption 5." *United States* v. *Weber Aircraft Corp.*, 465 U. S. 792, 799.[2]

---

[2] The privilege protecting presentence reports is unquestionably "well recognized in the case law as precluding routine disclosure." See, *e. g.*, *United States* v. *Charmer Industries, Inc.*, 711 F. 2d 1164, 1175–1176

In sum, the clear state of the law before today's decision has been that "the scope of Exemption 5 is to be determined without regard to the particular circumstances or needs of any specific actual or hypothetical party." *Brockway* v. *Department of Air Force*, 518 F. 2d 1184, 1192, n. 7 (CA8 1975). Or as one of the current FOIA looseleaf services categorically states: "[N]o requester is entitled to greater rights of access under Exemption 5 by virtue of whatever special interests might influence the outcome of actual civil discovery to which he is a party." J. Franklin & R. Bouchard, Guidebook to the Freedom of Information and Privacy Acts, § 1.08[2], p. 1–72 (2d ed., 1987). Thus, it is simply inaccurate for the Court to say that "the reasoning of the cases denying disclosure to third-party requesters would have little applicability to a request by a defendant to examine his own report . . . ." *Ante*, at 13. The reasoning of the cases, like the reasoning of the scholars and the language of the statute, recognizes no such thing as a "third-party requester," since it affirms that *all* FOIA requesters have equivalent status, and equivalent right to the *public documents* that the FOIA identifies. Nor is the Court's error corrected by the qualifier that it adds, "particularly in light of Rule 32(c)'s specific mandate that the report be disclosed to the defendant during sentencing." *Ibid.* That "mandate" (which in any event, as I have discussed, does not require provision of a retention-copy of the document) cannot be applied without impermissibly adverting to the individuating characteristics of the requester.

The Court's error is further demonstrated by the provisions of the Privacy Act of 1974, 5 U. S. C. § 552a—which, unlike the FOIA, *is* intended to provide to a particular individual documents that would not be available to the public at large, namely, documents containing "information about

(CA2 1983); *United States* v. *Martinello*, 556 F. 2d 1215, 1216 (CA5 1977); *United States* v. *Figurski*, 545 F. 2d 389, 391 (CA4 1976); *United States* v. *Greathouse*, 484 F. 2d 805, 807 (CA7 1973); *United States* v. *Evans*, 454 F. 2d 813, 819–820 (CA8), cert. denied, 406 U. S. 969 (1972).

[that] individual." § 552a(a)(4). Why, one might wonder, did not the present respondents seek the requested report under the provisions of that legislation? The answer is § 552a(j)(2)(C), which specifically permits agencies, by regulation, to exclude from available records "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."[3] This provision, when combined with the limitations contained in Rule 32 and the 1976 Parole Act, makes it entirely clear that Congress did not mean the FOIA to give these respondents any greater right than the general public to copies of their presentence investigation reports.

Since, as I have confessed earlier, it is not clear to me why providing a copy of the report is so much worse than providing inspection, it may perhaps be that the dire consequences predicted by those who persuaded Congress to adopt the limitations that we today repeal will not ensue. I have no doubt, however, that today's decision will be a bombshell in the area of FOIA law. Contrary to settled precedent, the Court has adopted the principle that the individuating characteristics of the requester may be taken into account for purposes of one of the most important and frequently invoked exemptions, Exemption 5. To be sure, only a particular individuating characteristic, which the Court takes pains to narrow, is the subject of the present suit. But once we have adopted the principle, we have condemned the lower courts (and, I suppose, ourselves) to an appreciable increase in the volume of FOIA litigation, as one requester after an-

---

[3] The Parole Commission has invoked this available exemption. See 28 CFR § 16.85(a)(2) (1987). With respect to presentence reports in particular, the regulations provide that requests "must be directed to the appropriate court." § 2.56(b). It is this regulation, rather than the Court's holding today, which genuinely implements the intent of Rule 32(c)—that copies of the report can be retained only with the permission of the sentencing court.

other tests whether some statute, some principle of law, some court rule, justifies taking *his* particular characteristics into account. I respectfully dissent from this unfortunate holding.