MICHAEL, Circuit Judge,
dissenting:
I respectfully dissent. The documents exchanged between Research in Motion, Ltd. (RIM) and the Department of Justice (DOJ) about the BlackBerry patent infringement case (BlackBerry litigation) brought by NTP, Inc. against RFM were improperly withheld by DOJ under exemption 5 of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5). This conclusion is mandated by Department of the Interior v. Klamath Water Users Protective Ass’n, 532 U.S. 1, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). Klamath makes clear that RIM’s communications with DOJ were undertaken in RIM’s own interest as a self-advocate at the expense of its opponent, NTP. As a result, the communications did not meet exemption 5’s first condition as “intra-agency” communications and thus could not be withheld under exemption 5, even if RIM and DOJ shared a common interest in the BlackBerry litigation.
I.
FOIA’s exemption 5 allows the government to withhold “inter-agency or intraagency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.” 5 U.S.C. § 552(b)(5). To qualify under exemption 5, “a document must thus satisfy two conditions.” Klamath, 532 *289 U.S. at 8, 121 S.Ct. 1060. First, “its source must be a Government agency.” Id. (emphasis added). Second, “it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.” Id. The issue in this appeal is whether certain communications between RIM and DOJ are “intra-agency memorandums or letters” that DOJ could withhold under exemption 5.
We are bound by Klamath, the Supreme Court decision that sets the standard for determining when exemption 5 may extend to communications between outsiders and government agencies. In Klamath certain Indian tribes sent government-solicited communications to the U.S. Department of the Interior (the Department) with respect to pending water allocation decisions to be made by the Department; and one tribe communicated with the Department about the scope of claims the Department would assert on the tribe’s behalf in state-court litigation to adjudicate certain water rights. The Department invoked exemption 5 to deny certain FOIA requests, made by a group adverse to the tribes, for tribe-Department communications with respect to the water allocation proceedings. The issue before the Court was whether the documents passing between the tribes and the Department were “intra-agency memorandums or letters,” a condition necessary to exempt them from disclosure.
The Court in Klamath began its analysis by emphasizing that “neither the terms of [exemption 5, which cover ‘intra-agency memorandums,’] nor the statutory definitions,” 5 U.S.C. §§ 551(1), 552(f), “say anything about communications with outsiders,” 532 U.S. at 9, 121 S.Ct. 1060. To begin with, the prefix “intra-” means “within.” Webster’s New College Dictionary 595 (3d ed. 2008). Thus, as the Court observed, “the most natural meaning of the phrase ‘intra-agency memorandum’ is a memorandum that is addressed both to and from employees of a single agency.” 532 U.S. at 9, 121 S.Ct. 1060 (quoting Dep’t of Justice v. Julian, 486 U.S. 1,18 n. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988) (Scalia, J., dissenting)) (emphasis added). The Court recognized, however, that some courts of appeals “have held that [exemption 5] extends to communications between Government agencies and outside consultants hired by them.” Id. at 10, 121 S.Ct. 1060. It was critical, however, that those consultants did not represent any other interest while providing advice to an agency:
In such cases, the records submitted by outside consultants played essentially the same part in an agency’s process of deliberation as documents prepared by agency personnel might have done.... [T]he fact about the consultant that is constant in the typical cases is that the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an [agency] employee would be expected to do.
Id. at 10-11,121 S.Ct. 1060.
After assuming, without deciding, that communications from a disinterested consultant to an agency may qualify as “intraagency” under exemption 5, the Court held that the tribal communications to the government in Klamath were not intra-agency. According to the Court, the intraagency condition excludes an outsider’s communication that seeks agency action “that is necessarily adverse to the interests of [the outsider’s] competitors.” Id. at 14, 121 S.Ct. 1060. Because the tribes were advancing their own interests, in competition with others, their communications to the Department of the Interior *290 with respect to water allocation proceedings were not intra-agency communications under exemption 5. Put differently, the tribes, though labeled as consultants by the agency, were simply not “enough like the agency’s own personnel to justify calling their communications ‘intra-agency.’ ” Id. at 12,121 S.Ct. 1060.
Under Klamath the documents passing between RIM and DOJ were not intraagency. In communicating with DOJ with respect to the BlaekBerry litigation, RIM was acting in its own interest as a self-advocate at the expense of its opponent and competitor, NTP. RIM was in a tight spot when it began lobbying DOJ in March 2005 to intervene on RIM’s side in the BlaekBerry litigation. RIM faced a district court judgment that, among other things, (1) determined that REVI’s BlackBerry system had infringed NTP’s patents and (2) enjoined RIM from further infringement. Although the broad injunction was stayed pending appeal, the Federal Circuit, in affirming the district court in part, cleared the way for the reinstatement of the injunction on remand.
The prospect of an injunction prompted RIM in January 2005 to retain Herbert Fenster, a Washington, D.C., lawyer, for the purpose of lobbying the government to oppose any injunction, or to argue for a limited one, in the BlaekBerry litigation. Fenster understood that the government could not be enjoined from use of the BlaekBerry system, but he argued to DOJ that it should oppose an injunction altogether because the government-related BlaekBerry “uses that could be [exempted] from an injunction were so inextricably intertwined with non-government related uses that there would be no practical way to separate them.” J.A. 57. Fenster also urged DOJ to oppose any injunction because the public interest — not just the government’s operational interests — would be impaired by a broad injunction that prohibited commercial use of the BlaekBerry system. Fenster continued to press DOJ to argue for no injunction even after RIM and DOJ entered into the November 10, 2005, common interest agreement, a document confirming that the government’s declared interest was limited to requesting the court to fashion an injunction that would not interfere with the government’s use of the BlaekBerry system.
Fenster’s communications to DOJ on behalf of RIM had the same characteristics and objectives that led the Supreme Court in Klamath to reject the argument that the tribes’ communications with the government in that case were intra-agency. Fenster was a “self-advocate[ ]” pressing RIM’s view “at the expense of [NTP]” in urging DOJ to take “position[s] necessarily adverse to [NTP].” Klamath, 532 U.S. at 12-13, 121 S.Ct. 1060. In other words, the “object of [Fenster’s] communications” was a series of DOJ decisions that would “necessarily [be] adverse to the interests of [a] competitor ],” NTP. Id. at 14, 121 S.Ct. 1060. Finally, Fenster was not like a “consultant [who] functions just as an [agency] employee would be expected to do.” Id. at 11, 121 S.Ct. 1060. That is, although his entreaties to DOJ on behalf of RFM were legitimate, he was not like the consultant whose “only obligations are to truth and its sense of what good judgment calls for.” Id. at 11, 121 S.Ct. 1060 (emphasis added). Klamath affords us no leeway. The Fenster-DOJ communications do not qualify as intra-agency.
The majority argues that when an outsider and the government have a unitary interest that fits within the common interest doctrine, communications between the outsider and the agency can be understood as “intra-agency” under exemption 5. The common interest doctrine, however, relates only to the second condition of exemption *291 5, that is, the communication “must fall within the ambit of a privilege against discovery.” Klamath, 532 U.S. at 8, 121 S.Ct. 1060. Satisfaction of the second condition cannot serve as automatic satisfaction of the first condition. As the Supreme Court emphasized in Klamath, there is “no textual justification for draining the first [intra-agency] condition of independent vitality,” id. at 12, 121 S.Ct. 1060, and “the first condition of Exemption 5 is no less important than the second,” id. at 9, 121 S.Ct. 1060. Failure to satisfy the first (intra-agency) condition “rules out any application of Exemption 5” to a communication that would otherwise be privileged against discovery. Id. at 12, 121 S.Ct. 1060.
As I have already discussed, Fenster was not functioning intra-agency when he urged DOJ to argue against an injunction, or in favor of one substantially reduced in scope, in the BlackBerry litigation. This conclusion, of course, means that the government cannot communicate in secret with an outsider who might have useful advice, but who cannot be regarded as acting intra-agency. In Klamath the Court recognized, and accepted, this very outcome as mandated by Congress in FOIA. The Court agreed with the government’s argument (1) “that the candor of tribal communications with the Bureau [of Indian Affairs] would be eroded without the protections of the deliberative process privilege recognized under Exemption 5,” and (2) “that confidentiality in communications with tribes is conducive to a proper discharge of [the government’s] trust obligation [to the tribes].” Id. at 11, 121 S.Ct. 1060. However, the government’s argument “skip[ped] a necessary step,” the Court emphasized, “for it ignore[d] the first condition of Exemption 5, that the communication be ‘intra-agency.’” Id. at 12, 121 S.Ct. 1060. Here, the majority skips the same necessary step when it holds that the common interest privilege is sufficient by itself to invoke the protection of exemption 5.
II.
The majority appears to be most concerned with an issue that is not presented in this case: whether a communication, privileged under the common interest doctrine, between an agency and a non-agency co-party is exempt from disclosure under exemption 5. This question should be left for another day because RIM and the government were not co-parties here. Rather than seeking to become a party, the United States filed a statement of interest and later obtained leave to intervene for the limited purpose of appearing at a hearing on injunctive relief.
Self-serving communications from outsiders, like Fenster’s on behalf of RIM to DOJ to lobby it to file a statement of interest, are the very sort of communications that FOIA meant to expose to the light of day. A statement of interest, which is authorized by 28 U.S.C. § 517, is designed to explain to a court the interests of the United States in litigation between private parties. Blondín v. Dubois, 238 F.3d 153, 159 n. 6 (2d Cir.2001). It goes without saying that a statement of interest can affect the outcome. See, e.g., Republic of Austria v. Altmann, 541 U.S. 677, 701-02, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004). When an outsider, such as Fenster, who is not acting intra-agency, lobbies the government to file a statement of interest supporting the position of the outsider’s client, FOIA requires that the outsider’s communications be disclosed. In this way, “FOIA’s mandate of broad disclosure,” Klamath, 532 U.S. at 16, 121 S.Ct. 1060, serves as a healthy check on both the government and the lobbyists.
*292 III.
This case disproves the majority’s argument that once the government decides that it has a common interest with an outsider, “the danger of self-advocacy at the expense of others subsides” or “has by then past.” Ante at 25 (internal quotation marks, alteration, and citation omitted). Here, after DOJ and RIM formed a common interest in arguing for a limited injunction against RIM, RIM (through Fenster) continued to lobby DOJ to go much further and oppose, on public interest grounds, the award of any injunction at all. Even under the majority’s approach, communications between RFM and DOJ about the public interest — an area where RIM and DOJ had not formed a common interest — should be disclosed.
More fundamentally, once RIM and DOJ formed a common interest in limiting an injunction, RIM’s self-advocacy at the expense of NTP did not subside or disappear insofar as the scope of an injunction was concerned. Rather, RIM was spurred to lobby DOJ to press for the narrowest injunction possible, whether or not the government’s interest could have been accommodated by one that was broader. This effort by RIM — to convince DOJ that the common interest would be best advanced by an essentially toothless injunction — was at one level undertaken by RIM in its own interest to weaken the position of NTP, its competitor. At this level RIM was acting as a self-advocate and not acting intra-agency.
The majority gets no mileage from the Supreme Court’s statement in United States v. Weber Aircraft Corp., 465 U.S. 792, 801-02, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), that it does not construe FOIA as a mechanism for easy circumvention of normal discovery privileges. The Court emphasized that it would “simply interpret Exemption 5 to mean what it says.” Id. at 804, 104 S.Ct. 1488. Later, in Klamath the Court read exemption 5 as setting forth two conditions of equal importance. It concluded that exemption 5 was inapplicable when the communications were not intra-agency but “would normally be privileged in civil discovery.” Klamath, 532 U.S. at 5, 121 S.Ct. 1060. In other words, when communications between an outsider and the government fail the first (intraagency) condition, the communications must be disclosed even if they meet the second (discovery privilege) condition.
Finally, I do not, as the majority suggests, draw formal, arbitrary lines or parse words in reading exemption 5. I simply apply the Supreme Court’s straightforward interpretation of exemption 5 in Klamath: the intra-agency condition excludes a self-interested outsider’s communication that seeks agency action “that is necessarily adverse to the interests of [the outsider’s] competitor[ ].” Id. at 14, 121 S.Ct. 1060. RIM’s communications to DOJ were not intra-agency because RIM acted throughout in a way that was necessarily adverse to NTP. As DOJ was formulating its statement of interest in the BlackBerry litigation, RIM pressed DOJ to argue for a very narrow injunction, which would benefit RIM at the expense of NTP. Thus, the government was not immune from RIM’s self-interested lobbying even after a common interest was formed. Because this sort of lobbying is not intra-agency, exemption 5 does not shield it from public disclosure.