# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**JACK W. WADE, JR.,** *et al.*,    )
                                    )
      **Plaintiffs,**              )
                                    )
      **v.**                       )      **Civil Action No. 10-65 (RMC)**
                                    )
**INTERNAL REVENUE SERVICE,**       )
                                    )
      **Defendant.**               )
_____     )

## MEMORANDUM OPINION

Plaintiffs, Jack W. Wade, Jr., and National Tax Services, Inc., filed this lawsuit against Defendant Internal Revenue Service ("IRS") seeking "disclosure of agency records which have been improperly withheld from [Plaintiffs]," Compl. [Dkt. #1] at 1, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Specifically, Plaintiffs seek "a recently updated copy of the computer records of the list of Enrolled Agents who are listed with the Office of Professional Responsibility . . . [including] the entire database, with all database fields, excepting those that cannot be released due to FOIA restrictions, such as Social Security Numbers, etc." Compl. ¶ 5. After making such a request via letter to the IRS, the IRS requested an extension of time to respond, but also offered Plaintiffs the right to file suit immediately. *Id*. ¶ 7. Plaintiffs did so, filing suit on January 14, 2010. On March 30, 2010, the IRS released a record to Plaintiffs that the IRS determined was fully responsive to the FOIA request. *See* Status Report [Dkt. # 8] at 1. The IRS moves for summary judgment arguing that it (1) conducted an adequate search of its records in

response to Plaintiffs' FOIA request;[1] and (2) that it properly withheld the home phone numbers of the Enrolled Agents pursuant to 5 U.S.C. § 552(b)(6), the personal privacy exemption of FOIA. Plaintiffs argue that the personal privacy exception is inapplicable to the "home" phone numbers. Because the personal privacy exception is not only applicable but appropriate, the IRS's motion for summary judgment will be granted.

## I. FACTS

Jack W. Wade, Jr., is the sole owner and president of National Tax Services, Inc. ("NTS"), which has been in business since 1986. *See* Opp'n, Ex. 2 ("Decl. of Jack W. Wade, Jr.") ¶ 3. "The principle activity of NTS is to provide a means for the marketing of tax, accounting, and financial related products and services to tax preparers, tax practitioners, and tax professionals, on IRS's mailing lists." *Id*. Since its inception, NTS has obtained several mailing lists from the IRS, and makes those lists available to tax, accounting, and financial vendors who wish to sell their products to the tax practitioners on the mailing lists. *Id*. ¶ 4. NTS also rents those IRS mailing lists to the same vendors so they can reach tax professionals with their own mailings. *Id*. ¶ 6. One of those mailing lists is the Enrolled Agents' listing,[2] which contains the contact information for all Enrolled Agents. *Id*. ¶ 10. From 1986 to 1990, this Enrolled Agents' listing was made available through the Office of Professional Responsibility of the Treasury Department. *Id*. ¶ 11. In 1990, this listing was no longer available administratively and was only available through the Department of

---

[1] Plaintiffs do not contest the adequacy of the search. *See* Pls.' Opp'n to Def.'s Mot. for Summ. J. ("Opp'n") [Dkt. # 18] at 1 n.1.

[2] Enrolled Agents are one of the categories of practitioners who may practice before the IRS after application. They are eligible to represent taxpayers before all administrative levels of the IRS.

Commerce's National Technical Information Service. *Id*. ¶ 12. NTS acquired this listing through the National Technical Information Service until 1995, at which point, until 2004, Plaintiffs acquired the Enrolled Agents' listing through FOIA requests to the Office of Professional Responsibility. *Id*. ¶¶ 13–14. For five years, Plaintiffs did not request a listing, *id*. ¶ 15, until August 5, 2009, when Plaintiffs sent a FOIA request to receive a copy of the Enrolled Agents' listing. *Id*. ¶ 15.

From August 2009 to August 2010, Plaintiffs frequently discussed with the IRS the scope of their request and the extent to which the IRS could comply. *Id*. ¶ 16. This was complicated by the introduction of a new database program, Entillitrak ("E-trak"), which requires conversion of data fields from IRS's previous database program, the Enrolled Practitioner Program System ("EPPS"). Plaintiffs filed suit on January 14, 2010. "On March 30, 2010, the IRS released an Excel spreadsheet consisting of 44,864 records that contained the Enrolled Agent's name, address, phone number, and e-mail address." *Id*. ¶ 17. The letter accompanying that spreadsheet noted that the IRS collects a "primary" phone number and a "secondary" phone number, and that the "secondary" phone number was not released to protect the privacy of those individuals' home phone numbers. *Id*. ¶ 17. Additional fields of information were released on July 23, 2010, after Plaintiffs clarified their request. Def.'s Mot for Summ J. ("Def.'s Mot.") [Dkt. # 15], Ex. 2 ("First Declaration of Carmen M. Banerjee") ¶¶ 4–8. At this point, the IRS has released all of the information Plaintiffs have sought, except for the home phone numbers of the Enrolled Agents. *Id*.

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. FOIA cases are typically and appropriately decided on motions for summary judgment. *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).

### B. Freedom of Information Act

FOIA "calls for broad disclosure of Government records." *C.I.A. v. Sims*, 471 U.S. 159, 166 (1985). However, Congress has recognized that "public disclosure is not always in the public interest," *id.* at 167, as "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Recognizing this, Congress provided "nine specific exemptions under which disclosure could be refused." *Id.*; *see* 5 U.S.C. § 552(b). Because the mandate of FOIA calls for broad disclosure of Government records, these FOIA exemptions are narrowly construed. *See U. S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).

When an agency refuses to disclose requested records, it bears the burden of proving the applicability of any claimed exemptions. *See* 5 U.S.C. § 552(a)(4)(B). "An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit . . . ." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). These affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson*, 565 F.3d at 862. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982) & *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

## C. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The D.C. Circuit has long recognized, however, that documents may be withheld in their entirety when nonexempt portions "are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). A court may also rely on government affidavits that show with reasonable specificity why documents withheld pursuant

to a valid exemption cannot be further segregated. *Armstrong v. Exec. Office of the President,* 97 F.3d 575, 578 (D.C. Cir.1996).

## III. ANALYSIS

FOIA provides an exemption from disclosure of materials involving "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6). The only disputed issue between the parties in this case is whether the IRS may invoke 5 U.S.C. § 552(b)(6) to withhold the home phone numbers of Enrolled Agents.

To support a withholding, an individual's privacy rights are balanced against the public's interest in disclosure, and only when the invasion of the privacy interest is clearly unwarranted will the withholding survive under the exemption. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 372-73 (1976). Furthermore, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding *of the operations or activities of the government*." *Dep't of Def. v. Federal Labor Relations Auth.,* 510 U.S. 487, 495 (1994) (citations omitted).

The IRS conducted such a balance and determined that release of the home telephone numbers of the Enrolled Agents "would result in an unwarranted invasion of personal privacy," because there was "minimal, to no, public interest served by disclosing home telephone numbers, and a substantial individual privacy interest" in protecting disclosure of the home telephone numbers. *See* Def.'s Mot.*,* Ex. 4 ("Declaration of Amy L. Mielke") ¶ 20. The Court agrees.

The Court must first look to the public interest. As in *Federal Labor Relations Authority*, the "relevant public interest supporting disclosure in this case is negligible, at best." 510 U.S. 497. And just as "[d]isclosure of the addresses might [have allowed] the unions to communicate more effectively with employees," in *Federal Labor Relations Authority*, the disclosure of the home phone numbers of Enrolled Agents here might, as Plaintiffs argue, help the public at large access greater contact information for Enrolled Agents who complete public tax returns, "but it would not appreciably further 'the citizens' right to be informed about what their government is up to." *Id*. (citation omitted). Governmental transparency is not effected by such a disclosure, and to whatever degree it might be, the disclosure of the "primary" phone numbers and addresses of the Enrolled Agents suffices to accommodate that *de minimis* public interest.

The Court must then balance this public interest against the personal interest involved in disclosing the home telephone numbers of Enrolled Agents. *See Dep't of the Air Force*, 425 U.S. at 372-73. Again, the Court finds *Federal Labor Relations Authority* instructive. Just as the home addresses of individuals in *Federal Labor Relations Authority* constituted private information the disclosure of which was deemed to be an unwarranted invasion of privacy protected by Exemption 6, the disclosure of the Enrolled Agents' home phone numbers similarly would be an unwarranted invasion of privacy protected by Exemption 6. *See* 510 U.S. at 500. The Supreme Court's rationale in *Federal Labor Relations Authority* for withholding home addresses is no less instructive here with "home" phone numbers:

> Many people simply do not want to be disturbed at home by work-related matters. Employees can lessen the chance of such unwanted contacts by not revealing their addresses to their exclusive representative. Even if the direct union/employee communication facilitated by the disclosure of home addresses were limited to mailings, this does not lessen the interest that individuals have in

> preventing at least some unsolicited, unwanted mail from reaching them at their homes. We are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions.

510 U.S. at 501. Accordingly, there is compelling privacy interest in withholding home phone numbers, and, when balanced against the minimal, if any, public interest in disclosure, production of the home telephone numbers of Enrolled Agents would "constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6).

Plaintiffs attack this analysis by arguing that the home phone numbers are not necessarily home phone numbers at all, but really are "secondary" numbers that the IRS *assumes* are home numbers. They argue that if these "secondary" numbers are in actuality alternate business numbers or cell phone numbers, the IRS's privacy argument is defeated. Plaintiffs first note that the IRS's recent conversion of the database collecting the Enrolled Agents' information from the EPPS to the E-trak system has changed the data fields from "home" and "work" numbers to "primary" and "secondary" numbers. Plaintiffs then allege that this conversion has misidentified "secondary" numbers as "home" numbers and support this argument with an IRS letter, dated March 30, 2010, which states: "The Service has made the *assumption* that the 'primary' numbers are the Enrolled Agents' work numbers, and the 'secondary' phone numbers are their home numbers." Opp'n, Ex. 1 ("IRS letter") (emphasis added). Plaintiffs ignore the more recent declaration of John Brueggerman, Technical Project Manager with the IRS, dated August 26, 2010, who conclusively states that such an assumption was a reality: "By email dated June 17, 2010, I confirmed that the migration document used during the conversion from EPPS to E-trak indicated that 'home phone' was converted to 'secondary phone' and that 'work phone' was converted to 'best daytime phone.'

In other words, the "home" telephone number field in EPPS became the "secondary" telephone number in E-trak." *See* Def.'s Mot*.,* Ex. 3 ("Declaration of John Brueggerman") ¶ 11.

Plaintiffs conducted an experiment to test whether any of the "work" numbers were in fact "home" numbers. Plaintiffs checked the "work" phone numbers of a sample of 73 Enrolled Agents, of the more than 44,000 possible, and this sampling allegedly revealed that the "work" phone numbers often were located at home addresses, residential addresses, or were cell phones. *See* Decl. of Jack Wade Jr. ¶¶ 17–29. Even accepting this sampling as an accurate representation of the whole, and accepting the experiment's procedure and conclusion, the results are irrelevant. There are many reasons why an Enrolled Agent might have a residential address or have a home or cell phone number as his "primary" number, such as working out of a residential neighborhood, a home, or using a cell phone for work. But most importantly, the Enrolled Agents identified a number as their "home" phone number in the EPPS database, and should be afforded the privacy attendant to that. The IRS has legitimately determined that any "home" phone number, as identified by the Enrolled Agents, constitutes private information the disclosure of which would be an unwarranted invasion of privacy protected by Exemption 6.

Lastly, the IRS properly segregated this withheld information from all other information, as evidenced by the declaration of Amy L. Mielke, an attorney with the IRS's Office of General Counsel:

> I am familiar with the segregation requirement of subsection (b) of the FOIA for any nonexempt information contained in responsive agency records. I have reviewed all documents at issue in this litigation and have attempted to make every reasonably segregable non-exempt portion of every responsive document available to Wade. As a result, I conclude that the Service has withheld in their entirety only those documents that fall within a FOIA exemption, or those documents wherein the portions exempt from disclosure under the

> FOIA are so inextricably intertwined with nonexempt material as to be non-segregable.

Declaration of Amy L. Mielke ¶ 19. Everything they requested except the home telephone numbers of the Enrolled Agents was given to Plaintiffs.

## IV. CONCLUSION

Because disclosing the home phone numbers of Enrolled Agents would constitute a substantial invasion of a privacy interest, which outweighs any negligible public interest, and because only the home numbers have been withheld, to the exclusion of all other segregable material, the IRS properly withheld this information pursuant to 5 U.S.C. § 552(b)(6). For these reasons, the Internal Revenue Service's Motion for Summary Judgment [Dkt. # 15] will be granted. A memorializing Order accompanies this Memorandum Opinion.

Date: March 23, 2011          _____/s/_____
                                     ROSEMARY M. COLLYER
                                     United States District Judge