**ENERGY RESEARCH FOUNDATION, et al., Appellants,**

**v.**

**DEFENSE NUCLEAR FACILITIES SAFETY BOARD, Appellee.**

**No. 90–5096.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1990.

Decided Oct. 26, 1990.

Eric R. Glitzenstein, with whom Dean Tousley, Washington, D.C., and Robert Guild, Jacksonville, Fla., were on the brief, for appellants.

Margaret S. Hewing, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Douglas N. Letter, Atty., Dept. of Justice, and Richard Azzaro, Atty., Defense Nuclear Facilities Safety Board, Washington, D.C., were on the brief, for appellee.

Before BUCKLEY, D.H. GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The Defense Nuclear Facilities Safety Board does not consider itself an "agency" subject to the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), or the Government in the Sunshine Act, 5 U.S.C. § 552b. The Board therefore does not make its records available to the public under FOIA and it does not open its meetings pursuant to the Sunshine Act. Appellants are two organizations and an individual who wish to attend the Board's meetings and review its records. They sued for a declaratory judgment and an injunction requiring the Board to comply with these statutes. The district court ruled on summary judgment that neither FOIA nor the Sunshine Act applied to the Board because it is not an "agency." We reverse.

The Department of Energy operates plants and other facilities that produce

atomic weapons and conduct research and development in the military application of atomic energy. 42 U.S.C. § 2121(a)(1), (2). The mission of the Defense Nuclear Facilities Safety Board is to monitor these facilities with an eye toward promoting the public health and safety.

Congress created the Board in 1988. The Board is independent of the Energy Department and is composed of five members with expertise in nuclear safety. 42 U.S.C. § 2286(a), (b)(1). Each is appointed by the President, with the advice and consent of the Senate. 42 U.S.C. § 2286(b)(1). The Board has three basic duties. It must review and evaluate "standards relating to the design, construction, operation, and decommissioning of defense nuclear facilities of the Department of Energy...." 42 U.S.C. § 2286a(1); see also 42 U.S.C. § 2286a(4). It must investigate practices or events at such facilities that may adversely affect public health and safety. 42 U.S.C. § 2286a(2); see also 42 U.S.C. § 2286a(3). Finally, it must recommend measures to the Secretary of Energy that are, in the Board's view, "necessary to ensure adequate protection of public health and safety." 42 U.S.C. § 2286a(5).

The Board's recommendations are subject to an elaborate procedure. After receiving a Board recommendation, the Secretary must reply in writing. 42 U.S.C. § 2286d(b)(1). If the Secretary accepts the Board's recommendation, he must prepare a plan to implement it; if he rejects it, the Board must reconsider its recommendation. 42 U.S.C. § 2286d(d), (e). If the Board resubmits the same or a modified recommendation and the Secretary persists in rejecting it, he must explain why and transmit his explanation to the House and Senate. 42 U.S.C. § 2286d(d). The Board has no authority to enforce its recommendations. With certain exceptions, the Board's recommendations, the Secretary's responses, and the Secretary's explanations must be published in the Federal Register. 42 U.S.C. § 2286d(a), (b)(2), (d).

In performing its functions, the Board may conduct hearings, compel testimony, require the production of documents, hire staff and assign them to any Energy Department nuclear facility, and obtain assistance from the Nuclear Regulatory Commission. 42 U.S.C. § 2286b(a), (f), (h). The Board is also empowered to promulgate its own regulations and to require the Secretary to report to it classified information and other information protected from disclosure. 42 U.S.C. § 2286b(c), (d).

As this recital indicates, the Board deals with highly sensitive information concerning matters critical to the nation's defense and to public health and safety. For this reason, the Board believes that even if it were subject to FOIA and the Sunshine Act, exceptions to these statutes would enable it to close its meetings and withhold its records. We express no opinion on the subject. If the Board is an "agency" it is covered by these statutes. That depends, not on the exemptions in FOIA or the Sunshine Act, but on the statutory meaning of the term "agency."

FOIA's definition of "agency," which the Sunshine Act adopts with a modification not here pertinent, 5 U.S.C. § 552b(a)(1), is as follows:

[T]he term "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f). The reference to § 551(1) is to the Administrative Procedure Act's definition of "agency"—namely, "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," except Congress, the judiciary and a few other select bodies. 5 U.S.C. § 551(1).

In creating the Board, Congress used the same terms contained in § 552(f)'s description of "agency." The Board's statute reads: "There is hereby established an independent *establishment in the executive branch*, to be known as the 'Defense Nuclear Facilities Safety Board'...." 42 U.S.C. § 2286(a) (emphasis added). It

would be a tall piece of statutory construction for a court to say that an "establishment in the executive branch" as used in § 2286(a) is not an "establishment in the executive branch" within the meaning of § 552(f). *See* Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes,* in BENCHMARKS 224 (1967) ("when Congress employs the same word, it normally means the same thing, when it employs different words, it usually means different things").

It is of course possible that identical phrases may carry different meanings in different statutes. "Oversight," for example, could mean watchful care or inadvertent error. Context can make the difference. But here Congress added the "establishment" language to § 552(f) in 1974 for the purpose of expanding FOIA's coverage. H.R.CONF.REP.NO. 1380, 93d Cong., 2d Sess. 14 (1974); *see* H.R.REP. No. 876, 93d Cong., 2d Sess. 8 (1974); S.Rep. No. 854, 93d Cong., 2d Sess. 33 (1974), 1974 U.S.Code Cong. & Admin.News 6267. Through these words, Congress sought to encompass entities that might have eluded the APA's definition in § 551(1), which FOIA had incorporated by reference. At the time of the amendment, several federal entities had already come into existence through statutes proclaiming, as does the Board's, that there is hereby created "an establishment in the executive branch." *See, e.g.,* 38 U.S.C. § 201 (Veterans' Administration); 39 U.S.C. § 201 (United States Postal Service); 39 U.S.C. § 3601(a) (Postal Rate Commission). The House Report on the 1974 FOIA amendment specifically mentioned the Postal Service as an example of an "establishment in the executive branch" which would now be included in the amended definition of "agency." H.R.Rep. No. 876, *supra,* at 8. Furthermore, the "establishment" language was not innovative. Before 1974, Congress had been using "establishment in the executive branch" to describe what it meant by "agency." *See, e.g.,* 22 U.S.C. § 2552(b) (Arms Control and Disarmament Act); 40 U.S.C. § 472(a) (Federal Property and Administrative Services Act of 1949); 40 U.S.C. § 612(4) (Public Buildings Act); 42 U.S.C. § 2014(*l*) (Atomic Energy Act of 1954); 50 U.S.C. § 403a (CIA Act of 1949); Federal Reports Act of 1942, Pub.L. No. 77–831, § 7(a), 56 Stat. 1078, 1079–80 (current version at 44 U.S.C. § 3502(1)). *See also* 5 U.S.C. § 104, defining "independent establishment" as "an establishment in the executive branch ... which is not an Executive department" for purposes of Title 5.

With respect to the Board's statute, we find nothing to indicate that Congress intended to excuse the Board from complying with FOIA or the Sunshine Act. In fact the Board's statute indirectly refers to FOIA. *See* 42 U.S.C. § 2286d(h)(2), citing to 42 U.S.C. § 2168, which authorizes the Secretary to prohibit the unauthorized dissemination of certain unclassified information so long as he does so in accordance with the FOIA exemption set forth in "section 552(b)(3) of Title 5."

The Board argues, however, that § 2286d(a) renders the Sunshine Act inapplicable to it. Section 2286d(a) requires the Board, "after receipt by the Secretary of Energy of any [Board] recommendations," "promptly" to make public its recommendations. The Board thinks this forbids it from revealing recommendations in public before the Secretary sees them. Thus, the Board believes it cannot hold open meetings to decide what to recommend.

Even if we were to accept the Board's reading of § 2286d(a), the Board's status as an "agency" would not be affected. The Board meets to consider matters other than recommendations to the Secretary. Its statute contemplates as much. *See, e.g.,* 42 U.S.C. § 2286b(f), (g), (j). No provision comparable to § 2286d(a) applies to the subjects of such meetings. Under the Board's logic, it therefore would be an "agency" for those meetings, but not an "agency" when it met to consider recommendations. There is nothing in the Sunshine Act, and certainly nothing in FOIA, that would countenance such an odd result. Furthermore, even if the Board's governing statute directed it to close all its meetings, which it does not, the Board would be no less an "agency." The Sunshine Act contains exceptions to accommodate statutory directives inconsistent with the Act's public meeting requirements. 5 U.S.C. § 552b(c). As we have said, whether the

Board may successfully invoke those exceptions is simply not the issue here. .

This ordinarily would be the end of the matter. The Board insists, however, that there is a gloss on FOIA's definition of "agency," a qualification not evident on the face of § 552(f). In the Board's view, the "sole function" test derived from *Soucie v. David*, 448 F.2d 1067 (D.C.Cir.1971), must be used to determine whether it is an "agency" within § 552(f). It was on this basis that the district court ruled in the Board's favor.

*Soucie* held that the Office of Science and Technology (OST) in the Executive Office of the President was an "agency" covered by FOIA. At the time of the court's decision, FOIA borrowed the definition of "agency" contained in § 551(1) of the APA, which we have quoted earlier. The court thought that if OST's "sole function were to advise and assist the President, that might be taken as an indication that the OST is part of the President's staff and not a separate agency." 448 F.2d at 1075. The court determined, however, that OST was an "agency" because it not only advised the President but also had the "independent function of evaluating federal programs...." *Id.* In a later decision, rendered prior to the 1974 amendment, we recognized that an entity outside the Executive Office of the President should be considered an "agency" if it had its own staff, had broad powers of investigation, had legal authority to make decisions, and conducted independent evaluations of federal programs. *Washington Research Project, Inc. v. Department of Health, Education and Welfare*, 504 F.2d 238, 246–48 (D.C.Cir.1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).

After *Soucie*, Congress expanded FOIA's definition of "agency" to include any "other establishment in the executive branch of the Government (including the Executive Office of the President)." The Conference Report on the amendment, citing *Soucie*, stated that "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President" cannot be considered an "agency" under FOIA. H.R. CONF.REP. NO. 1380, *supra*, at 15. Relying

on this statement in the Report, the Supreme Court ruled that someone acting as a "Presidential adviser, only" could not be considered an "agency" subject to FOIA under § 552(f). *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 156, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980).

Since the 1974 amendment, we have twice decided whether an entity within the Executive Office of the President is an "agency" under FOIA. In one case, we ruled that the Council on Environmental Quality is an "agency" because it not only advised the President, but also evaluated federal programs. *Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259, 1263 (D.C.Cir.1980). In the other case, we determined that the Council of Economic Advisers is not an "agency" subject to FOIA because its duties simply facilitate providing advice to the President. *Rushforth v. Council of Economic Advisers*, 762 F.2d 1038, 1042–43 (D.C.Cir.1985). Although we have decided two other cases interpreting § 552(f) since the 1974 amendment, neither involved entities within the Executive Office of the President and neither mentioned the sole function test. *Public Citizen Health Research Group v. Department of Health, Education and Welfare*, 668 F.2d 537 (D.C.Cir.1981); *Rocap v. Indiek*, 539 F.2d 174 (D.C.Cir.1976).

Even if we were inclined to evaluate the Board's status as an "agency" under the *Soucie* standard, which would place us in disagreement with *Crooker v. Office of Pardon Attorney*, 614 F.2d 825, 828 (2d Cir.1980), the Board still would not prevail. The Board does considerably more than merely offer advice. It conducts investigations, which "has long been recognized as an incident of legislative power" delegated to agencies by Congress. *See Soucie*, 448 F.2d at 1075 n. 27. It has at its disposal the full panoply of investigative powers commonly held by other agencies of government. The Board formally evaluates the Energy Department's standards relating to defense nuclear facilities and it forces public decisions about health and safety. Evaluation plus advice was enough to make the Office of Science and Technolo-

gy an "agency" in *Soucie*. It also was enough in *Pacific Legal Foundation* to render the Council on Environmental Quality subject to FOIA. *Soucie* itself recognized that an entity in the federal government which "investigates, evaluates and recommends" is an "agency." *Soucie*, 448 F.2d at 1073 n. 15, 1075. The Board of course performs precisely these functions. It investigates, evaluates and recommends and it has the additional authority to impose reporting requirements on the Secretary of Energy, 42 U.S.C. § 2286b(d).

As a practical matter, we can perceive no reason why Congress would have wanted to shield the Board from the operation of FOIA and of the Sunshine Act. The Department of Energy, which provides sensitive information to the Board, 42 U.S.C. § 2286c(a), is itself subject to FOIA. *See* 10 C.F.R. § 1004.1 (1989). Congress may of course exclude the Board from FOIA or the Sunshine Act or both. But it has not yet done so and the Board therefore must be considered an "agency" within the meaning of both statutes.

*Reversed and Remanded.*