NATURAL RESOURCES DEFENSE COUNCIL, INC. and Energy Research Foundation, Petitioners,

v.

DEFENSE NUCLEAR FACILITIES SAFETY BOARD, Respondent.

No. 91–1199.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 14, 1991.

Decided July 24, 1992.

Order on Denial of Rehearing En Banc Oct. 9, 1992.

Eric R. Glitzenstein, with whom Katherine A. Meyer, Washington, D.C., and Dan W. Reicher, Boston, Mass., were on the brief, for petitioners.

Robert M. Andersen, Gen. Counsel, Defense Nuclear Facilities Safety Board, with whom Richard A. Azzaro, Associate Gen. Counsel, Washington, D.C., was on the brief, for respondent.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

Dissenting opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

BUCKLEY, Circuit Judge:

Respondent Defense Nuclear Facilities Safety Board issued regulations, as required by the Government in the Sunshine Act, setting forth the circumstances under which it will deny public access to its meetings. The regulations provide, *inter alia,* that the Board may close meetings, or portions of meetings, involving deliberations on Board recommendations relating to the public health and safety. Petitioners, Natural Resources Defense Council and Energy Research Foundation, are environmental organizations that challenge the Board's regulation as contrary to the requirements of the Sunshine Act. Because we find that the Board properly invoked Exemption 3 of the Act, we uphold the regulation.

## I. Background

### A. Statutory Framework

The Government in the Sunshine Act, 5 U.S.C. § 552b (1988), provides that agency meetings will be open to public observation unless the material to be discussed at the meeting qualifies under one or more of ten exemptions defined in section 552b(c). Exemption 3 allows an agency to close portions of a meeting likely to

> disclose matters specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

*Id.* § 552b(c)(3).

The Board operates pursuant to its enabling statute, the Defense Nuclear Facilities Safety Board Act. *See* 42 U.S.C. §§ 2286–2286i (1988). The Safety Act requires the Board to review, investigate, and evaluate the standards, operations, design, and construction of Department of Energy ("DOE") defense nuclear facilities, *see id.* § 2286a(1)–(4), and to make recommendations to the Secretary of Energy when such recommendations "are necessary to ensure adequate protection of public health and safety," *id.* § 2286a(5). Section 2286d(a) provides for the "[p]ublic

availability" of the Board's recommendations:

> Subject to subsections (g) and (h) of this section and *after* receipt by the Secretary of Energy of any recommendations from the Board under section 2286a of this title, the Board promptly shall make such recommendations available to the public in the Department of Energy's regional public reading rooms and shall publish in the Federal Register such recommendations.

*Id.* § 2286d(a) (emphasis added).

The Safety Board Act adjusts this scheme when the Board determines that a recommendation "relates to an imminent or severe threat to public health and safety." *Id.* § 2286d(g)(1). In such cases, the Board is required to transmit its recommendation not only to the Secretary of Energy, but also to the President. *Id.* at § 2286d(g)(2). Then, "[a]fter receipt by the President of the recommendation ..., the Board promptly shall make such recommendation available to the public." *Id.* § 2286d(g)(3).

### B. Previous Related Case and the Board's Response

In *Energy Research Foundation v. Defense Nuclear Facilities Safety Bd.*, 917 F.2d 581 (D.C.Cir.1990), we rejected the Board's assertion that it was not an "agency" within the scope of the Sunshine Act and the Freedom of Information Act ("FOIA"). We therefore held that the Sunshine Act and FOIA applied, although we "express[ed] no opinion on the subject" of whether "exceptions to [the Sunshine Act and FOIA] would enable [the Board] to close its meetings and withhold its records." *Id.* at 582. After this decision, the Board promulgated "Rules Implementing the Government In the Sunshine Act." *See* 56 Fed.Reg. 9605–11 (1991) (codified at 10 C.F.R. § 1704 (1992)). Section 1704.4 of these rules provides that

> a meeting may be closed and information pertinent to such meeting ... may be withheld if the Board properly determines that such meeting or portion thereof or the disclosure of such information is likely to:

> . . . .

> (c) Disclose matters specifically exempted from disclosure by statute ... *Provided,* That such statute:

> (1) Requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

> (2) Establishes particular criteria for withholding or refers to particular types of matters to be withheld;

> *This exemption applies to Board meetings, or portions of meetings, involving deliberations regarding recommendations which, under 42 U.S.C. 2286d(a) and (g)(3), may not be made publicly available until after they have been received by the Secretary of Energy or the President, respectively.*

10 C.F.R. § 1704.4 (second emphasis added).

Petitioners challenge the regulation, arguing that sections 2286d(a) and (g)(3) of the Safety Board Act do not require the Board to withhold recommendations from the public. The Board insists, however, that the sections require, in unambiguous terms, that they not be released to the public until after they have been received by either the Secretary or the President. The Board also maintains that allowing the public to attend meetings at which recommendations are considered would frustrate free and open debate of highly sensitive issues affecting national security and public health and safety.

## II. DISCUSSION

### A. Standard of Review

Unless Congress's intent is "unambiguously expressed," we will generally defer to an agency's interpretation of its enabling statute so long as the interpretation is "based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). *Chevron* deference may be trumped, however, when the enabling statute must be read with other statutes, such as FOIA and the Sunshine Act, that impose general obligations on all government agencies. As we found in applying FOIA's nearly identical Exemption 3,

> since the statute's purpose—disclosure of certain information held by the government—creates tension with the understandable reluctance of government agencies to part with that information,

Congress intended that the primary interpretive responsibilities rest on the judiciary, whose institutional interests are not in conflict with that statutory purpose.

*Reporters Comm. for Freedom of the Press v. Dep't of Justice*, 816 F.2d 730, 734 (D.C.Cir.1987), *rev'd on other grounds*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). In that case, we concluded that

a statute that is claimed to qualify as an Exemption 3 withholding statute must, on its face, exempt matters from disclosure. We must find a congressional purpose to exempt matters from disclosure in the actual words of the statute ... [not] in an agency's interpretation of the statute.

*Id.* at 735 (footnote omitted). Therefore, we will not defer to the Board's construction of sections 2286d(a) and (g)(3) of the Safety Board Act in determining whether they meet the criteria of Exemption 3 of the Sunshine Act.

### B. Exemption 3

 To invoke Exemption 3, an agency must demonstrate (1) that a statute exists that either requires that matters be withheld from the public "in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld," 5 U.S.C. § 552b(c)(3); and (2) that the portion of the meeting to be closed is likely to disclose material protected by statute, *id.* at § 552b(c).

In this case, petitioners argue that sections 2286d(a) and (g)(3) do not require Board recommendations to be withheld from the public in terms that satisfy Exemption 3. In their view, "after" does not mean "only after"; therefore, these sections fall short of the requirement that they oblige the agency to withhold the recommendations. Petitioners thus claim that the Sunshine Act operates to allow public access to the Board meetings at which recommendations are formulated and adopted.

 We disagree. We find the Board's construction of the sections to be the natural one. Moreover, when read in context, "after" means "only after." Section 2286d(a), which was enacted after the Sunshine Act, requires that the Board make its "recommendations available to the public in the Department of Energy's regional public reading rooms" promptly "*after* receipt by the Secretary." 42 U.S.C. § 2286d(a) (emphasis added). This careful mechanism for the time-controlled disclosure of the recommendations would be unnecessary if they were generally available to the public at an earlier stage through the Sunshine Act. We therefore conclude that the most obvious reading of sections 2286d(a) and (g)(3) is also the correct one. Because they require the withholding of the recommendations until after they have been received by the Secretary or the President, the sections fall within Exemption 3.

Petitioners nevertheless argue that the Board's regulation is inconsistent with *United States Dep't of Justice v. Julian*, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988). There, two inmates had sued the Parole Commission under FOIA for disclosure of their presentence investigation reports. The Parole Commission claimed that the reports were exempt from disclosure under FOIA's Exemptions 3 and 5.

In arguing its Exemption 3 claim, the Parole Commission relied on two statutes that arguably provided for the time-controlled, limited disclosure of presentence reports. At that time, Rule 32(c)(3)(A) of the Federal Rules of Criminal Procedure provided that "[a]t a reasonable time before imposing sentence the court shall permit the defendant and his counsel to read the [presentence] report." Rule 32(c)(3)(E) further provided that any copy of the presentence report furnished to a defendant "shall be returned to the probation officer immediately following the imposition of sentence." After sentencing, a copy of the presentence report was typically transmitted to the Bureau of Prisons, where it could be used to determine the inmate's classification and privileges. The Parole Act required the Parole Commission to provide a prisoner, at least thirty days before a scheduled parole hearing, with "reasonable access to [the presentence] report ... used by the Commission in making" its parole determination. 18 U.S.C. § 4208(b) (1982).

The Parole Commission argued that these statutes demonstrated that although Congress intended defendants/inmates to have some access to their presentence reports, it also sought to limit that access to the times specifically provided in Rule 32(c) and the Parole Act. *See Julian*, 486 U.S.

at 10–11, 108 S.Ct. at 1612–13. The Supreme Court found, however, that

> neither the Rule nor the Act satisfies the requirements of Exemption 3. Both provisions have been recently changed, not to protect the presentence report from disclosure, but to ensure that it would be disclosed to the defendant who is about to be sentenced or who is up for parole.

*Id.* at 9, 108 S.Ct. at 1611. The Court refused to "convert the Rule, a part of which is essentially designed to mandate disclosure, into a statute that 'specifically exempt[s] from disclosure' for purposes of Exemption 3 of the FOIA." *Id.* at 10, 108 S.Ct. at 1612.

*Julian* is readily distinguished. The Rule and the Parole Act require sentencing courts and parole boards to provide defendants and inmates with their presentence reports no later than the times specified; they contain no language expressly denying defendants and inmates access to their reports at other times. Furthermore, the disclosure authorized by the Supreme Court in *Julian* is to the inmates who are the subjects of the presentence reports, not to the public at large. The Court noted that Rule 32(c) required that reports furnished defendants pursuant to the Rule be returned to the sentencing courts in order "to ensure that [the reports] do not become available to unauthorized persons," *Julian,* 486 U.S. at 10, 108 S.Ct. at 1612, but observed that the Parole Act only required that "reasonable access" be given to a presentence report, and that "there is no express limitation on an inmates power to retain a copy of the report." *Id.* at 11, 108 S.Ct. at 1612. The Court's restriction of the FOIA disclosure to the requesting inmates was noted by Justice Scalia in his dissent. *See id.* at 15, 108 S.Ct. at 1615 (Scalia, J., dissenting) ("today's decision ... makes a departure ... from the general principle of the Freedom of Information Act that individuating characteristics of requestors are not to be considered"). Here, the statutory language requires that the information be made available to the public *after* a specific event, thereby precluding the *public* disclosure of recommendations dealing with highly sensitive matters before they reach the person or persons to whom they are directed.

In upholding the challenged regulation, we remind the Board that it may invoke the regulation only with respect to that portion of a meeting during which recommendations that will be sent to the Secretary or the President are likely to be discussed, *see* 5 U.S.C. § 552b(c); and that before it does so, the Board must determine by a majority vote that it will be discussing recommendations. *See id.* § 552b(d)(1). Moreover, after a closed meeting, the Board must provide the public with a transcript, electronic recording, or minutes of all portions of the meeting not devoted to the Board's recommendations. *See id.* § 552b(f)(2).

## III. CONCLUSION

For the foregoing reasons, we deny the petition for review.

*So ordered.*

STEPHEN F. WILLIAMS, Circuit Judge, dissenting:

Exemption 3 of the Sunshine Act piggybacks on other statutes, permitting an agency to close the portions of a meeting that are likely to "disclose matters *specifically exempted* from disclosure by statute". 5 U.S.C. § 552b(c)(3) (1988) (emphasis added). The exempting statute must also satisfy one of exemption 3's two subsections. It will satisfy subsection (A) if it "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue", *id.* § 552b(c)(3)(A); it will satisfy subsection (B) if it "establishes particular criteria for withholding or refers to particular types of matters to be withheld", *id.* § 552b(c)(3)(B). The Board here invoked exemption 3 to justify closing all its meetings concerning recommendations to the Secretary of Energy and the President, pointing to statutes whose only relevant language, far from exempting anything from disclosure, specifically or otherwise, *forces* the Board not merely to disclose information but to broadcast it via the Federal Register. *See* §§ 315(a) and 315(g) of the Defense Nuclear Facilities Safety Board Act, 42 U.S.C. §§ 2286d(a), (g)(3) (1988). Unable to find any negative implication in this disclosure mandate, I dissent.

Quite apart from a general presumption in favor of disclosure under the Sunshine Act, *Common Cause v. NRC,* 674 F.2d 921, 932 (D.C.Cir.1982); see also *United States Department of State v. Ray,* — U.S. —, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991) (noting FOIA's "strong presumption in fa-

vor of disclosure [that] places the burden on the agency to justify the withholding of any requested [information]"), exemption 3 in particular is to be narrowly construed. In its original form, as an exemption to the Freedom of Information Act, it merely provided that FOIA was inapplicable to matters "specifically exempted from disclosure by statute". 5 U.S.C. § 552(b)(3) (1970). In *Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), the Supreme Court held that this language authorized nondisclosure whenever a statute granted an agency discretionary power to decide whether disclosure was in the public interest and the agency decided not to disclose. Congress thought this reading too broad, however, and, when it enacted the Sunshine Act in 1976, it specifically overruled *Robertson* and amended exemption 3 to narrow the category of exempting statutes. See H.R.Rep. No. 880, 94th Cong., 2d Sess. 9–10, 23, *reprinted in* 1976 U.S.C.C.A.N. 2183, 2191, 2204–05; H.R.Conf.Rep. No. 1441, 94th Cong., 2d Sess. 25, *reprinted in* 1976 U.S.C.C.A.N. at 2261; *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1137–38 & n. 37 (D.C.Cir. 1987); *Irons & Sears v. Dann*, 606 F.2d 1215, 1219–20 (D.C.Cir.1979). As amended, exemption 3 (identical for both FOIA and the Sunshine Act) covers only statutes that fit one or the other of its two subsections quoted above. Subsection (A) "embraces only those statutes incorporating a congressional mandate of confidentiality that, however general, is 'absolute and without exception.'" *American Jewish Congress v. Kreps*, 574 F.2d 624, 628 (D.C.Cir.1978) (footnotes and citation omitted). Subsection (B), by contrast, allows room for administrative discretion in two narrowly defined areas, where it is either constrained by "particular criteria" or limited to "a narrowly-defined category of records", *Reporters Committee for Freedom of the Press v. Department of Justice*, 816 F.2d 730, 736–37 n. 9 modified, 831 F.2d 1124 (D.C.Cir.1987), rev'd on other grounds, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). But subsection (B)'s "unmistakable thrust, like that of Subsection (A), is to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch." *American Jewish Congress*, 574 F.2d at 628.

The provisions invoked by the Board, 42 U.S.C. §§ 2286d(a) and (g)(3), do not even mention withholding at all, much less require it (subsection (A) of exemption 3) or specify particular criteria to govern withholding or specific matter that the agency may withhold in its discretion (subsection (B) of exemption 3). Instead, the provisions affirmatively require specific forms of disclosure and publication. Section 2286d(a) says:

> Subject to subsections (g) and (h) of this section and after receipt by the Secretary of Energy of any recommendations from the Board under section 2286a of this title, the Board promptly shall make such recommendations available to the public in the Department of Energy's regional public reading rooms and shall publish in the Federal Register such recommendations and a request for the submission to the Board of public comments on such recommendations. Interested persons shall have 30 days after the date of the publication of such notice in which to submit comments, data, views, or arguments to the Board concerning the recommendations.

And subsection 2286d(g)(3), which applies to recommendations related to "an imminent or severe threat to public health and safety", provides:

> After receipt by the President of the recommendation from the Board under this subsection, the Board promptly shall make such recommendation available to the public and shall transmit such recommendation to the Committees on Armed Services and on Appropriations of the Senate and to the Speaker of the House of Representatives. The President shall promptly notify such committees and the Speaker of his decision and the reasons for that decision.

The majority reads "after" in both subsections as "only after", Maj. op. at 1251, and transforms a mandate for publication into one for concealment. Of course statutes *may* have negative implications. The legislative history, for example, might clearly indicate that Congress had picked a specific time as the earliest permissible, so that all prior disclosure was forbidden. Not so here. The Board was created in response to environmental, safety and health problems identified at several of the Department of Energy's nuclear facilities. The Senate Committee on Armed Services conducted hearings to investigate the problems and ultimately recommended creating an independent advisory board that would

have as its "primary mission to identify the nature and consequences of any significant potential threats to public health and safety, to elevate such issues to the highest levels of authority, and *to inform the public*." S.Rep. No. 232, 100th Cong., 1st Sess. 21 (1987) (emphasis added). There is simply no evidence that Congress thought it was picking the delivery of recommendations to the ·Secretary as the *first* acceptable moment for disclosure. The Board's argument is really a variation on the maxim *expressio unius est exclusio alterius,* which we have tended to reject in the administrative context, reading omissions as blanks that can be filled in with administrative discretion. See *Cheney R.R. Co. v. ICC,* 902 F.2d 66, 68–69 (D.C.Cir.1990) (citing cases); cf. *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Here, of course, after Congress's overturning of *Robertson,* a statute giving the agency discretion is not enough.

The negative inference seems especially weak here. Section 2286d(a) is not addressed to meetings at all; its focus is documents—recommendations to the Secretary of Energy and the President. More important, it does not merely specify the sort of accessibility that the FOIA process creates by requiring agencies to respond to *requests* for documents. Instead it directs affirmative agency steps—placement in the Department of Energy's public reading rooms, and publication in the Federal Register of the recommendations and a request for comments. A mandate of widespread dissemination seems an unlikely way of expressing a ban on any prior disclosure.

The Supreme Court has shown a clear reluctance to find negative implications in mandates of disclosure, even very specific ones. In *Department of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, ·100 L.Ed.2d 1 (1988), the Justice Department argued that because Rule 32 of the Federal Rules of Criminal Procedure and the Parole Act required the government to disclose presentence reports to federal defendants and prisoners at particular times (prior to sentencing and parole determinations), they required withholding under all other circumstances, thereby satisfying exemption 3. The Court refused to find any negative implication. It characterized the Rule and Act as generally aimed at ensuring disclosure, *id.* at 9–10, 108 S.Ct. at 1611–12,

which is equally true here. Addressing a claim that Rule 32(c)(3)(E)'s requirement that presentence reports be returned to the court suggested Congress's intention to specifically exempt the reports from disclosure, it said: "[T]his provision does qualify somewhat the defendant's access to his or her presentence report when that report is furnished by the district court in the context of sentencing, but in our opinion it does not convert the Rule, a part of which is *essentially designed to mandate disclosure,* into a statute that 'specifically exempt[s] from disclosure' for purposes of Exemption 3". *Id.* at 10, 108 S.Ct. at 1612 (emphasis added).

The majority concedes *Julian*'s basic thrust, see Maj. op. at 1251–52, yet dismisses its relevance on the ground that neither the Rule nor the Parole Act contained any language "expressly denying defendants and inmates access to their reports at other times", *id.* at 7, 108 S.Ct. at 1610. This is not a distinction but a similarity. Neither subsection 2286d(a) nor subsection 2286d(g)(3) contains language expressly denying the public access to the Board's meetings.

In creating the Board, Congress explicitly considered the problem of information it would be risky to disclose. Subsection 2286d(h) specifically excludes from disclosure both (1) classified information and (2) unclassified information that is non-disclosable pursuant to regulations issued by the Secretary of Energy under §§ 147 and 148 of the Atomic Energy Act, 42 U.S.C. §§ 2167, 2168. Those sections, in turn, authorize the Secretary of Energy and Nuclear Regulatory Commission to promulgate rules prohibiting the disclosure of certain types of information but only "if the unauthorized disclosure of such information could reasonably be expected to have a·significant adverse effect on the health and safety of the public or the common defense and security". *Id.* § 2167(a); see also *id.* § 2168(a)(2). As the Atomic Energy Act provisions explicitly cross-reference exemption 3, petitioners acknowledge that they protect such information from disclosure. Petitioners' Brief at 18.

Despite these protections, the Board expresses concern that some national security information might be revealed in a meeting on recommendations. Gov't Brief at 19–20. But the Board can eliminate that risk by closing meetings that are entirely devoted

to exempt matters, and any portions of meetings relating to such matters. There is neither need nor right to close off every discussion of prospective recommendations. See *Pan American World Airways, Inc. v. Civil Aeronautics Board*, 684 F.2d 31, 35–37 (D.C.Cir.1982); *Common Cause v. NRC*, 674 F.2d at 929, 936 n. 46; *Pacific Legal Foundation v. Council on Environmental Quality*, 636 F.2d 1259, 1265 (D.C.Cir. 1980) (noting "congressional insistence that meetings may be closed only on an individual and particularized basis").

In essence, the Board and the majority are here extending FOIA exemption 5 to the Sunshine Act. That exemption, 5 U.S.C. § 552(b)(5), protects predecisional deliberative documents, on the sensible ground that the prospect of disclosure would inhibit robust expression by those who participate in developing an agency position. See, e.g., *Access Reports v. Department of Justice*, 926 F.2d 1192, 1194–95 (D.C.Cir.1991). When Congress was drafting the Sunshine Act, several federal agencies requested a similar exemption for predecisional oral deliberations, but Congress refused. See *Common Cause v. NRC*, 674 F.2d at 929. Neither the Board nor we are free to reverse that judgment.

Before: MIKVA, Chief Judge; WALD, EDWARDS, RUTH B. GINSBURG, SILBERMAN, BUCKLEY, WILLIAMS, D.H. GINSBURG, SENTELLE, HENDERSON and RANDOLPH, Circuit Judges.

## ORDER

### Oct. 9, 1992.

Petitioner's Suggestion for Rehearing *En Banc* has been circulated to the full Court. No member of the Court requested the taking of a vote thereon. Upon consideration of the foregoing it is

ORDERED, by the Court *en banc*, that the suggestion is denied.

WILLIAMS, Circuit Judge, concurring in the denial of rehearing *en banc*.

For the reasons stated in my dissent, I continue to believe the panel decision is quite wrong. But it is hard to classify the dispute as one of "exceptional importance" or where *en banc* treatment is truly "necessary" to maintain uniformity of circuit law. See Rule 35(a), Federal Rules of Appellate Procedure. The opinion claims adherence to *United States Dep't of Justice v. Julian*, 486 U.S. 1 (1988), which appears to preclude finding a "require[ment]" of non-disclosure simply by application of the *expressio unius* maxim to a mandate of disclosure; the panel does not suggest that later cases have undermined *Julian*. Thus the decision is evidently driven by some idiosyncratic feature of 42 U.S.C. § 2286d(a) (1988), admittedly still undetectable by me, rather than by a view that specific mandates of disclosure *generally* support an inference that related disclosures are forbidden. Believing the case will cast no shadow over circuit law on Exemption 3, I have not called for a vote on rehearing *en banc*.

WALD, Circuit Judge:

I agree with Judge Williams on the merits of the issue. I am less sanguine about its "nonexceptional" nature; I can only hope his prediction of its "shadowless" character proves correct. I do not call for an *en banc* rehearing because I believe it would be futile to do so.