# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 2, 2021        Decided June 1, 2021

No. 19-5106

ROYCE CORLEY,
APPELLANT

v.

DEPARTMENT OF JUSTICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-02157)

———

*Noah B. Bokat-Lindell*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *David W. DeBruin* and *Ian Heath Gershengorn*, appointed by the court.

*Royce Corley*, pro se, filed the brief for appellant.

*Peter C. Pfaffenroth*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys. *Patricia K. McBride*, Assistant U.S. Attorney, entered an appearance.

Before: TATEL and RAO, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant Royce Corley brought suit under the Freedom of Information and Privacy Acts to obtain records from the Department of Justice related to his criminal prosecution. His case raises several issues, including whether the Child Victims' and Child Witnesses' Rights Act ("Child Victims' Act"), 18 U.S.C. § 3509, qualifies as a FOIA Exemption 3 withholding statute and, if so, whether it covers the records Corley seeks. Because we agree with the government that the answer to both questions is "yes," and that Corley's other arguments are without merit, we affirm the district court's grant of summary judgment to DOJ.

**I.**

In 2013, a jury sitting in the U.S. District Court for the Southern District of New York convicted Corley of three counts of sex trafficking of a minor, 18 U.S.C. § 1591(a), and one count of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). *See United States v. Corley*, 679 F. App'x 1, 3 (2d Cir. 2017) (summary order). Following his conviction, Corley alleges he sent three FOIA requests, two of which were also made under the Privacy Act, to the Department of Justice. DOJ denies that it received the first two, but acknowledges that it received the third.

Corley alleges that he sent the first request to the Department's Mail Referral Unit in the Justice Management Division. Compl. ¶ 15; *see also* 28 C.F.R. § 16.3(a)(2) ("A [FOIA] requester may [] send requests to the FOIA/PA Mail Referral Unit, Justice Management Division . . . . The Mail Referral Unit will forward the request to the component(s) that

it determines to be most likely to maintain the records that are sought."). According to Corley, the request sought data on the demographics of sex trafficking defendants and victims from 2003 to 2013. Compl. ¶ 15. Having received no response, Corley sent another letter "appeal[ing] the constructive denial" of his request, *id.*, to which he says he attached a copy of his initial request, Mot. for Summ. J. 16, Joint Appendix (J.A.) 102. The Mail Referral Unit assigned Corley's appeal a tracking number and referred it to the Office of Information Policy, which handles FOIA appeals. Mail Referral Unit Acknowledgement Letter, J.A. 162; *see also* 28 C.F.R. § 16.8(a) ("A requester may appeal any adverse determinations to [the Office of Information Policy].").

Roughly eight months later, the Office of Information Policy sent a letter rejecting what it called Corley's "attempt[] to appeal from the action of the Mail Referral Unit (MRU) on [his] request for records concerning demographics of subjects charged with sex trafficking." Office of Information Policy Response, J.A. 164. It explained that "Department of Justice Regulations provide for a Freedom of Information Act administrative appeal only after there has been an adverse determination by an identified component." *Id.* (citing 28 C.F.R. § 16.9(a) (2014)). And since "MRU ha[d] no record of having received a FOIA request from [Corley]" nor "did [Corley] identify any other component of the Department of Justice from whose action [he] might be appealing," there was "no action for th[e] Office to consider on appeal." *Id.* Accordingly, the Office closed Corley's "appeal file." *Id.*

Corley claims that he sent his second FOIA request, also brought under the Privacy Act, to the U.S. Attorney's Office for the Southern District of New York. Compl. ¶ 16. He sought records related to himself, his alias "Ron Iron," and his case. *Id.* Again receiving no response, Corley sent a letter appealing

the "constructive denial." *Id.* The U.S. Attorney's Office forwarded the appeal to the Executive Office for United States Attorneys, which processes requests for records maintained by U.S. Attorneys' Offices. Stone Decl. ¶¶ 6, 9, J.A. 77. The request lay dormant until the filing of this lawsuit, after which the Executive Office instructed the U.S. Attorney's Office to perform a search for responsive records. *Id.* ¶ 6, J.A. 77. The Executive Office then released 93 pages of material in full and 58 pages in part. *Id.* ¶ 11, J.A. 78. It withheld 323 pages of responsive records, including "the names, descriptions and other personally identifiable information" of Corley's victims. Stone Decl. ¶¶ 11, 15–17, J.A. 78–79. To justify its withholdings, the Executive Office invoked, among others, FOIA Exemption 3, which authorizes withholding of certain materials "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The "statute" DOJ relied on was the Child Victims' Act, which restricts disclosure of "information concerning a child [victim or witness]." 18 U.S.C. § 3509(d)(1)(A)(i). With respect to the Privacy Act, the Executive Office withheld records under subsection (j)(2), which allows an agency to "exempt any system of records" from the relevant disclosure provisions if the agency "performs as its principal function any activity pertaining to the enforcement of criminal laws," and the record system itself consists of certain types of law enforcement information. 5 U.S.C. § 552a(j)(2).

Corley sent his third FOIA request, again also made under the Privacy Act, to the FBI. This request used the same search parameters as the one sent to the U.S. Attorney's Office. Hardy Decl. ¶ 5, J.A. 31. The FBI initially withheld all responsive records pursuant to FOIA Exemption 7(A), which exempts records that "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), such as an "investigative file," Hardy Decl. ¶ 7, J.A. 31. Corley appealed

to the Office of Information Policy, which affirmed the FBI's determination. Several months later, after the investigation concluded, the FBI informed Corley that it would release 40 pages of responsive records and withhold 89, including those that disclosed "the names[, ]descriptions . . . and other identifying information" of Corley's victims. *Id.* ¶¶ 11, 32, J.A. 32, 42. In support, the FBI relied on several FOIA exemptions, including Exemption 3 and the Child Victims' Act. *Id.* To justify its withholdings under the Privacy Act, the FBI relied on subsection (j)(2). *Id.* ¶¶ 23–25, J.A. 37–38.

The district court, over the course of three opinions, granted summary judgment to DOJ. *See Corley v. Holder*, No. 14-cv-2157 (D.D.C. Mar. 30, 2016), ECF No. 29; *Corley v. Sessions*, 280 F. Supp. 3d 164 (D.D.C. 2017); *Corley v. Department of Justice*, No. 14-cv-2157, 2019 WL 1427432 (D.D.C. Mar. 29, 2019). Corley appealed, and because he is pro se, we appointed David DeBruin as amicus curiae on his behalf, and his associate Noah Bokat-Lindell argued the case. Messrs. DeBruin and Bokat-Lindell have more than ably discharged their duties, and we thank them for their service.

At our direction, amicus briefed three issues: (1) whether DOJ properly withheld documents relating to Corley's victims under Exemption 3 and, by extension, the Child Victims' Act; (2) whether DOJ failed to assert a defense to Corley's Privacy Act claim based on the Executive Office request; and (3) whether DOJ should have construed Corley's premature administrative appeal as a new FOIA request.

## II.

FOIA Exemption 3 authorizes agencies to withhold records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). A statute qualifies for the exemption if it "requires that . . . matters be withheld from the

public in such a manner as to leave no discretion on the issue" or if it "establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* § 552(b)(3)(A). To withhold records under Exemption 3, an agency must make two showings: "that the statute [] is one of exemption as contemplated by Exemption 3," and "that the withheld material falls within the statute." *Larson v. Department of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). Amicus argues that DOJ has failed to satisfy its burden with respect to both requirements. Specifically, amicus contends that the Child Victims' Act does not qualify as an Exemption 3 withholding statute and that, in any event, it does not protect the documents in this case. We consider each argument in turn.

## A.

The Child Victims' Act addresses the treatment of "child" victims and witnesses by the federal criminal justice system. It defines a "child" as "a person who is under the age of 18, who is or is alleged to be—(A) a victim of a crime of physical abuse, sexual abuse, or exploitation; or (B) a witness to a crime committed against another person." 18 U.S.C. § 3509(a)(2).

Although much of the statute concerns children who testify at trial, it also contains privacy protections for child victims and witnesses. Subsection (d)(1) provides that "all employees of the Government connected with the case" who act "in connection with a criminal proceeding shall—(i) keep all documents that disclose the name or any other information concerning a child in a secure place to which no person who does not have reason to know their contents has access" and "(ii) disclose documents described in clause (i) or the information in them that concerns a child only to persons who, by reason of their participation in the proceeding, have reason to know such information." *Id.* § 3509(d)(1)(A), (B)(i). Subsections (d)(2) and (d)(3) contain similar provisions that

authorize sealing and protective orders for "information concerning a child." *Id.* § 3509(d)(2), (3). Subsection (d)(4) limits the reach of these provisions: "[t]his subsection does not prohibit disclosure of the name of or other information concerning a child to," among others, "the defendant, the attorney for the defendant . . . or to anyone to whom, in the opinion of the court, disclosure is necessary to the welfare and well-being of the child." *Id.* § 3509(d)(4).

We agree with the government that the Child Victims' Act unambiguously qualifies as an Exemption 3 statute. Stripped to its essence, the statute provides that "*all* employees of the Government" involved in a particular case "*shall* keep all documents that disclose the name or any other information concerning a child in a secure place" and disclose such documents "*only* to persons who, by reason of their participation in the proceeding, have reason to know such information." *Id.* § 3509(d)(1)(A)(i), (A)(ii), (B)(i) (emphasis added). This two-part requirement, that documents "shall" be kept "in a secure place" and disclosed "only" to authorized personnel (as opposed to the general public), *id.*, clearly "requires that . . . matters be withheld from the public in such a manner as to leave no discretion on the issue," 5 U.S.C. § 552(b)(3)(A)(i).

This understanding of the Act's privacy protections accords with our court's decision in *United States v. Brice*, 649 F.3d 793 (D.C. Cir. 2011). There, a criminal defendant appealed the district court's refusal to unseal "records of . . . two material witness proceedings" that the district court had "referred to" at sentencing. *Id.* at 794. He argued that the Child Victims' Act's privacy protections gave him a "right of access" to the sealed material. *Id.* at 797. Rejecting that contention, we explained that "[b]y its terms . . . § 3509(d) is not an affirmative

disclosure statute but rather *forbids disclosure* of sensitive information." *Id.* (emphasis added).

Relying on the Supreme Court's decision in *Department of Justice v. Julian*, 486 U.S. 1 (1988), amicus contends that the Child Victims' Act does not qualify as an Exemption 3 withholding statute because "it does not fully prohibit disclosure" as a result of subsection (d)(4), which states that the Act's privacy provisions "'do[] not prohibit disclosure . . . to,'" among others, "'the defendant.'" Amicus Br. 28 (quoting 18 U.S.C. § 3509(d)(4)). *Julian* concerned two defendants' FOIA requests for their "presentence investigation reports." 486 U.S. at 3. DOJ argued that Federal Rule of Criminal Procedure 32 and the Parole Act authorized withholding of the reports pursuant to Exemption 3. The two provisions mandated that criminal defendants receive access to their presentence reports at particular times, with exceptions for certain sensitive information. *Id.* at 8–9. The Court held that neither provision "specifically exempt[ed] the reports from disclosure," pointing out that Rule 32 and the Parole Act had been "recently changed, not to protect the presentence report from disclosure, but to ensure that it would be disclosed to the defendant." *Id*. As our court later explained, *Julian* hinged on the fact that Rule 32 and the Parole Act "contain[ed] no language expressly denying" access. *Natural Resources Defense Council, Inc. v. Defense Nuclear Facilities Safety Board*, 969 F.2d 1248, 1252 (D.C. Cir. 1992). By contrast, the Child Victims' Act unambiguously requires that government employees "shall . . . disclose documents [concerning a child] or the information in them that concerns a child *only* to persons who, by reason of their participation in the proceeding, have reason to know such information." 18 U.S.C. § 3509(d)(1)(A)(ii) (emphasis added); *see also Brice*, 649 F.3d at 797 ("The [Child Victims' Act] therefore does not afford a right of access.").

Subsection (d)(4)'s exemption of "disclosure . . . to the defendant" has nothing to do with the Exemption 3 analysis. Corley seeks these documents not as a criminal defendant under subsection (d)(4), but rather as a member of the public pursuant to FOIA. Except in limited circumstances under Exemption 5 not present here, "'[t]he identity of the requesting party has no bearing on the merits' of a FOIA request at all." *Loving v. Department of Defense*, 550 F.3d 32, 39 (D.C. Cir. 2008) (quoting *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 771 (1989)). This principle rings especially true for Exemption 3, which, by its terms, requires only that a statute withhold materials "from the public," rather than from the requester. 5 U.S.C. § 552(b)(3)(A)(i).

Amicus contends that the Act's privacy protections "do not clearly require withholding of records once a criminal trial ends" because they apply only to those acting "'in connection with a criminal proceeding.'" Amicus Br. 30 (quoting 18 U.S.C. § 3509(d)(1)(A)). But one can act as the custodian of a record "in connection with a criminal proceeding" long after the criminal proceeding has ended. 18 U.S.C. § 3509(d)(1)(A). Moreover, we seriously doubt that Congress intended that sensitive information become publicly available as soon as a criminal case ends.

**B.**

In the alternative, amicus argues that even if the Child Victims' Act's privacy protections qualify as an Exemption 3 withholding statute, they do not apply to the documents at issue because Corley's victims are no longer minors. Recall that the statute protects "documents that disclose the name or any other information concerning a child." 18 U.S.C. § 3509(d)(1)(A)(i). According to amicus, the phrase "concerning a child" refers only to victims and witnesses under eighteen and the

documents Corley seeks concern victims who are now over eighteen.

In support of its interpretation of the phrase "concerning a child," amicus relies on the statute's definition of "child," and the Dictionary Act. The former defines "child" as an alleged victim or witness "who *is* under the age of 18." *Id.* § 3509(a)(2) (emphasis added). The Dictionary Act provides that "unless the context indicates otherwise[,] . . . words used in the present tense include the future as well as the present." 1 U.S.C. § 1. Accordingly, amicus argues, "Congress's decision to employ the present tense [in the statutory definition] strongly suggests that the statute refers to the subject's current age." Amicus Br. 31. In other words, the use of "is" in the statutory definition means that whether information "concerns a child" depends on whether the victim "is" a child at the time of the FOIA request.

Although this argument has some facial appeal, the Dictionary Act, as noted above, does not apply when "the context indicates otherwise," 1 U.S.C. § 1, and here the "context" does just that. The use of the word "concerning" in relation to a document typically refers to the subject of the document; a document concerns a given subject if it is about that subject. And with respect to descriptions of the past, the subject can be described in terms that reflect the subject's previous state rather than its current state. A history book about Tsarist Russia concerns a monarchy even though Russia today is not a monarchy. Here, the documents at issue concern Corley's minor victims in their capacity as minor victims. Thus, they concern children. Consider a graphic photograph depicting the abuse of a child who is now an adult. We would colloquially use the present tense and say that the photograph is of a child, or in the words of the statutory definition, "a person who *is* under the age of 18," even though the victim is now an adult. 18 U.S.C. § 3509(a)(2) (emphasis added). Yet, it

would be odd to say that the photograph is of a child but no longer concerns a child.

True, several provisions of the Act appear to use the word "child" to reference a person's current age. For example, subsection (i) provides that "[a] child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child" and that the court "may allow the adult attendant to hold the child's hand or allow the child to sit on the adult attendant's lap throughout the course of the proceeding." *Id.* § 3509(i). But the statute uses the phrase "concerning a child" only in the privacy protections subsection, indicating that we should think about age differently for those provisions.

Interpreting "concerning a child" to refer to the subject's age at the time of the offense accords with the statute's purpose, to protect minor victims' and witnesses' privacy. Again, consider a graphic image depicting child abuse. If amicus were correct, then Congress would have authorized the potential release of a highly sensitive and private photograph as soon as the victim's eighteenth birthday. This strikes us as highly unlikely, especially since some trials, such as Corley's, occur after victims turn eighteen. *Cf.* 18 U.S.C. § 3509(d)(2) (provision of the Act mandating that "[a]ll papers to be filed in court that disclose the name of or any other information concerning a child shall be filed under seal").

Amicus acknowledges that some information about minor victims can be "undoubtedly sensitive," but suggests that agencies can prevent disclosure by invoking other FOIA exemptions on a case-by-case basis. Amicus Br. 2. But the Child Victims' Act is a general-purpose statute that governs in both FOIA and non-FOIA cases alike, and in these other contexts, agencies may lack alternative avenues to prevent

disclosure. And even if an agency may withhold the information in a given scenario, it may have no mandate to do so unless the Child Victims' Act's privacy protections apply.

Observing that Corley's victims were no longer minors at the time of his conviction, amicus suggests that the statute could alternatively be read to protect information concerning those who are still minors when a case goes to trial. This interpretation, however, finds no support in the statute's text. Nothing in the Act connects the privacy protections to trials. Indeed, most criminal cases end with a guilty plea, and we fail to see how amicus's proposed interpretation would apply in such situations. Certainly, Congress has given no indication that it wanted a victim whose culprit pleads guilty to go unprotected.

**III.**

This brings us to amicus's final two arguments.

First, amicus contends that DOJ forfeited any Privacy Act defenses for Corley's Executive Office request by failing to assert distinct Privacy Act exemptions in the district court. *See* 5 U.S.C. § 552a(t)(1) ("No agency shall rely on any exemption contained in section 552 of this title [FOIA] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section."). In its initial summary judgment motion, in a section titled "Withholding under the Privacy Act Is Proper," DOJ argued that Corley's "case file" was exempt based on Privacy Act subsection (j)(2) and 28 C.F.R. § 16.81. Mot. for Summ. J. 8–9, Supplemental Appendix 39–40. The former authorizes agencies to promulgate regulations exempting certain kinds of law enforcement records from Privacy Act disclosure, *see* 5 U.S.C. § 552a(j)(2), and the latter exercises that authority for "United States Attorneys Systems," 28 C.F.R. § 16.81. DOJ's motion,

while hardly a model of clarity, did assert grounds for withholding under the Privacy Act for the Executive Office request. Indeed, DOJ's reliance on 28 C.F.R. § 16.81 would have made little sense otherwise.

Amicus insists that even if DOJ made such an argument in its initial motion, it affirmatively waived all Privacy Act defenses in its summary judgment reply brief by stating that the Executive Office "did not withhold records under the Privacy Act; rather, it withheld under FOIA exemptions." Summ. J. Reply 6, *Corley v. Holder*, No. 14-cv-2157 (D.D.C. Mar. 30, 2016), ECF No. 24. But as the Supreme Court has explained, "[w]aiver is the intentional relinquishment or abandonment of a known right" and cannot be the product of "inadvertent error." *Wood v. Milyard*, 566 U.S. 463, 474 (2012) (internal quotation marks omitted). In that case, the Court found that a party had waived a particular argument after it "express[ed] its clear and accurate understanding" and "deliberately steered the District Court away from the question." *Id.* Given DOJ's assertion of the relevant Privacy Act exemption in its initial motion, as well as its consistent effort to withhold records throughout this litigation, we decline to treat its stray statement in the reply brief as an "intentional" or "deliberate" choice to waive all Privacy Act exemptions. *Id.* (internal quotation marks omitted).

Second, pointing out that Corley attached a copy of his initial request to his administrative appeal to the Justice Management Division, amicus argues that DOJ should have treated that appeal as a new FOIA request. But amicus cites to no legal authority, nor are we aware of any, imposing such a duty on DOJ. Indeed, just as a request must "reasonably describe" the desired records, 5 U.S.C. § 552(a)(3)(A)(i), a submission must be reasonably clear that its sender intends it to be a new request. *Cf. Truitt v. Department of State*, 897 F.2d

540, 544 (D.C. Cir. 1990) ("When, however, an agency becomes reasonably clear as to the materials desired, FOIA's text and legislative history make plain the agency's obligation to bring them forth."). Here, DOJ treated Corley's submission as what it purported to be: an administrative appeal with relevant supporting documents attached.

## IV.

Finding the remaining arguments raised solely by Corley to be without merit, we affirm the judgment of the district court.

*So ordered.*